Robert L. MERCER, Plaintiff,

v.

RAILDREAMS, INC., and Richard Taylor, Defendants.

No. 09–CV–13 (ADS)(WDW).

United States District Court,
E.D. New York.

April 7, 2010.

Pinks, Arbeit & Nemeth by: Steven G. Pinks, Esq., of Counsel, Hauppauge, NY, for the Plaintiff.

Ingerman Smith, L.L.P. by: Warren H. Richmond, III, Esq., of Counsel, Hauppauge, NY, for Defendant Richard Taylor.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On January 5, 2009, Robert L. Mercer ("Mercer") filed a complaint against Raildreams, Inc. ("Raildreams") and Raildreams' CEO Richard Taylor ("Taylor") (collectively "the Defendants") alleging that the Defendants overcharged him for constructing and installing a model railroad in his home. Presently before the Court is Taylor's Fed.R.Civ.P. 12(b)(1) motion to dismiss the Complaint for lack of subject matter jurisdiction on the ground that a forum selection clause in the parties' contract fixes Michigan as the appropriate venue. For the reasons that follow, Taylor's motion is granted.

## I. BACKGROUND

On December 19, 2001, the Raildreams entered into a contract with Mercer to construct and install a model railroad in Mercer's home. The contract provided that Mercer would pay the sum of $119,200 for Raildreams' services, plus reimbursement for certain enumerated "out of pocket" expenses. The contract also provided that "[t]he law of the State of Michigan shall govern this Agreement, and Houghton County, Michigan shall be the venue and jurisdiction for any litigation regarding this Contract." ¶ 21.

After the work was completed, the Defendants sent Mercer invoices in the amount of $2,694,833.45, representing the total value of materials, labor, and services provided by Raildreams. Mercer paid the full amount reflected on the invoices. However, on or about June 25, 2008, Mercer determined that the Defendants had overbilled him by the sum of $1,990,164. Mercer filed this lawsuit on January 5, 2009, alleging that: (1) the Defendants breached the contract by charging him more than the contract price; (2) the Defendants submitted fraudulent invoices; and (3) Taylor induced Raildreams to breach the parties' contract.

The Defendants did not answer the Complaint and Mercer moved for a default judgment on March 25, 2009. The Clerk of the Court issued a certificate of default on the same day. On April 3, 2009—nine days after the default was entered against the Defendants—Taylor filed an affidavit contesting the default.

In an order dated August 3, 2009, the Court found that there was good cause to vacate the default as against Taylor. In the same order, the Court also appointed counsel for Taylor. Raildreams, which is unrepresented in this case, was not relieved of its default. The matter has been referred to Judge Lindsay for the purposes of conducting an inquest as to damages against Raildreams.

On September 22, 2009, Taylor moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(1) in light of the forum selection clause designating Houghton County, Michigan as the appropriate venue for any lawsuits arising out of the parties' contract. In his opposition papers, Mercer countered that the version of the contract offered by Taylor only contained a conformed signature and that he did not recall signing the contract. To resolve this issue, the Court held an evidentiary hearing on April 2, 2010.

At the outset of the hearing, much to the Court's surprise, Taylor's counsel pro-

duced a copy of the contract that appeared to be signed by Mercer. Tr. at 2. The Court then heard testimony from both Mercer and Taylor. Taylor testified that after the parties finalized a design for the model railroad, Raildreams followed its usual practice by mailing two contracts to Mercer. Tr. at 33–34. Taylor further testified that his son found the signed copy of the contract when searching through Raildreams' files in a storage facility in Michigan. Tr. at 13–14.

On cross-examination, Mercer admitted that he remembered receiving a copy of the contract but could not state whether or not he actually returned a signed copy to Raildreams. Tr. at 43. After presenting Mercer with what appeared to be a signed copy of the contract, Taylor's counsel and Mercer had the following crucial exchange:

Q: Can you testify, sir, under oath, that that is not your signature?

A: No, I cannot.

Q: So, am I correct, sir, that that might be your signature?

A: Yes, you are correct.

Tr. at 45.

At the conclusion of the hearing, the Court determined that Taylor established "by a preponderance of the evidence that [Mercer] did sign [the] contract." Tr. at 46. The Court noted, however, that this finding was not dispositive on the issue of whether the forum selection clause was enforceable. Tr. at 49. The Court reserved decision on this issue and advised the parties that a written decision addressing Taylor's motion would follow.

## II. DISCUSSION

### A. Legal Standard

The Second Circuit has recognized that "there is no existing mechanism with which forum selection enforcement is a perfect fit." *New Moon Shipping Co. v.*

*MAN B & W Diesel AG*, 121 F.3d 24, 28–29 (2d Cir.1997); *Cfirstclass Corp. v. Silverjet PLC*, 560 F.Supp.2d 324, 326–27 (S.D.N.Y.2008) (observing that "[t]here is a split of authority in the Second Circuit regarding the appropriate procedural mechanism by which to enforce a forum selection clause."). Although Taylor might have invoked Rule 12(b)(3) or 12(b)(6), he has chosen to rely upon Rule 12(b)(1). *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 382 (2d Cir.2007) (analyzing a motion to enforce a forum selection clause under Rule 12(b)(3)); *cf. Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n. 6 (2d Cir.1998) (finding that a dismissal based on a forum selection clause was founded upon Rule 12(b)(6)). Mercer offers no objection and the Court can think of no sound reason not to use Rule 12(b)(1) as the procedural mechanism by which this motion is analyzed. *See AVC Nederland B.V. v. Atrium Inv. Partnership*, 740 F.2d 148, 152 (2d Cir.1984) (suggesting that Rule 12(b)(1) is the appropriate mechanism for seeking to enforce a forum selection clause).

"The burdens on a plaintiff opposing enforcement of a forum selection clause are similar to those 'imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant.' " *Cfirstclass Corp.*, 560 F.Supp.2d at 327 (quoting *New Moon Shipping*, 121 F.3d at 29). Under Rule 12(b)(1) "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In analyzing whether this burden has been carried, the Court must take "the facts in the light most favorable to the party resisting enforcement of the forum selection clause." *Cfirstclass Corp.*, 560

F.Supp.2d at 327 (citing *New Moon Shipping*, 121 F.3d at 29).

### B. Analysis

Taylor contends that the Complaint should be dismissed in light of a forum selection clause designating Houghton County, Michigan as the appropriate venue for any lawsuits arising out of the parties' contract. The Court has already determined that Mercer signed the contract. Nevertheless, Mercer offers three reasons why the forum selection clause should not be enforced.

First, Mercer contends that the contract itself is unenforceable under Suffolk County Administrative Code § 345–17(a) because the model railroad was a "home improvement" and neither Taylor nor Raildreams obtained a license to perform the work. Second, Mercer asserts that even if the contract is enforceable, the forum selection clause does not cover the instant lawsuit. Finally, in a letter filed after the hearing, Mercer argues that the Court should not honor the forum selection clause because Michigan is an inconvenient forum. The Court will address each of these arguments in turn.

#### 1. Suffolk County Administrative Code § 345

█ Suffolk County Administrative Code § 345–17 makes it "unlawful for any person to engage in any business as a home improvement contractor without obtaining a license therefor ..." Suffolk County Administrative Code § 345–17. "Suffolk County Administrative Code § 345–16 defines a 'home improvement contractor' as '[a] person who engages in home improvement contracting upon residential property' and further defines 'home improvement contracting' as 'any repair, remodeling, alteration, conversion, modernization, improvement or addition to residential property ...'" *Hakimi v. Cantwell Landscaping & Design, Inc.*, 50 A.D.3d 848, 850, 855 N.Y.S.2d 273 (2d Dep't 2008) (quoting Suffolk County Administrative Code § 345–16). Section 345–16 also provides a non-exhaustive list of home-improvement jobs that require a license, including:

> painting of residential structures; carpentry; fencing; driveways; exterminating; flooring; ductwork for heating, ventilation and air-conditioning systems; masonry; roofing; siding; swimming pools; and waterproofing, as well as other improvements to structures or upon land which are part of residential property, including landscaping and arboriculture

> Suffolk County Administrative Code § 345–16.

Under Section 345–8, any contract entered into by an unlicensed home improvement contractor "is unenforceable by him and voidable at the option of any other party to the contract ..." Suffolk County Administrative Code § 345–8. However, Section 345–8 "shall [not] be construed to prevent any other party to the contract from enforcing its terms." *Id.* Here, Taylor argues that he did not need a license to install a model railroad in Mercer's home because Section 345 does not apply to this type of work. The Court agrees.

Mercer is unable to point to any statutory language or reported decision defining the construction of a model railroad as the type of home improvement for which a license is required. Moreover, although the list of home-improvement jobs that require a license is non-exhaustive, it is clear that constructing a model railroad is different in kind from the other tasks enumerated in the statute. *See Innovative Audio Video v. Friedman*, 7 Misc.3d 383, 387, 789 N.Y.S.2d 417 (N.Y.Sup.Ct.2005) (finding that Section 345 did not require a

plaintiff to have a license in order to install video and stereo equipment in the defendant's home). The Court finds that Taylor did not need a license in order to build a model railroad in Mercer's home. Therefore, Section 345 does not provide a basis for invalidating the parties' contract.

### 2. Whether the Forum Selection Clause Covers this Lawsuit

██ The forum selection clause at issue provides that "[t]he law of the State of Michigan shall govern this Agreement, and Houghton County, Michigan shall be the venue and jurisdiction for any litigation regarding this Contract." ¶ 21. Notwithstanding the breadth of this provision, Mercer argues that his fraud claim does not arise out of the parties' agreement and that therefore the forum selection clause does not cover this dispute. The Court disagrees.

Mercer's third cause of action is styled as a fraud claim and alleges that Taylor and Raildreams sent inflated invoices charging him more than the Defendants were entitled to under the contract. Although this cause of action sounds in fraud rather than breach of contract, it clearly arises from the contract. Indeed, the basis for the claim is that the allegedly false invoices inflated the contract price. Moreover, it is settled law in this Circuit that forum selection clauses are to be interpreted broadly and are not restricted to pure breaches of the contracts containing the clauses. *See Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1361 (2d Cir.1993) (finding that a forum selection clause applicable to controversies arising "in connection with" a set of contracts detailing the rights and duties of investors and marketers encompassed investors' securities and RICO claims); *Bense v. Interstate Battery Sys. of Am., Inc.,* 683 F.2d 718, 720–21 (2d Cir.1982) (finding that a forum selection

clause applicable to controversies "arising directly or indirectly" from a franchise agreement encompassed the franchisee's antitrust suit against franchisor). In this case, the Court finds that the so-called fraud cause of action is covered by the broad forum selection clause in the parties' contract.

### 3. Whether the Court Should Honor the Forum Selection Clause

██ Mercer argues essentially that the Court should subject the parties' mandatory forum selection clause to the forum non conveniens analysis and find that Michigan is an inconvenient forum for this lawsuit. However, this is not the analysis that Court's undertake in evaluating the validity of a forum selection clause.

██ "A forum selection clause is presumptively valid, and will control 'absent a strong showing that it should be set aside.'" *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litigation,* 228 F.Supp.2d 348, 372 (S.D.N.Y.2002) (quoting *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). This strong presumption may be overcome "by a clear showing that the clause[ ][is] 'unreasonable' under the circumstances.'" *Roby,* 996 F.2d at 1363 (quoting *M/S Bremen,* 407 U.S. at 10, 92 S.Ct. 1907). Forum selection clauses are unreasonable:

(1) if their incorporation into the agreement was the result of fraud or overreaching (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state

*In re Assicurazioni*, 228 F.Supp.2d at 373 (internal citations and quotation marks omitted). It is clear to the Court, from its own supervision of this case, that the forum selection clause was not incorporated into the contract through fraud or overreaching. There is also no indication that the clause contravenes public policy or that the law of Michigan would deprive Mercer of a remedy in this case. Moreover, although Mercer's letter claims in the most general of terms that the Michigan forum is inconvenient, he does not explain how enforcing the forum selection clause would work a gravely inconvenient or unfair result. *See Strategic Mktg. & Commc'n, Inc. v. Kmart Corp.*, 41 F.Supp.2d 268, 274 (S.D.N.Y.1998) (observing that the "mere inconvenience and expense of traveling are not themselves adequate reasons to disturb the parties' contractual choice of forum."). Ultimately, there is simply no sound reason why the contract's forum selection clause should not be honored.

To summarize, the Court finds that: (1) Mercer signed the contract containing the forum selection provision; (2) the forum selection clause is enforceable; and (3) the forum selection clause is broad enough to encompass the parties' dispute. Accordingly, Taylor's Fed.R.Civ.P. 12(b)(1) motion is granted.

### III. CONCLUSION

Taylor's Fed.R.Civ.P. 12(b)(1) motion is granted. The Clerk of the Court is directed to transfer this case to the appropriate trial court in Houghton County, Michigan.

**SO ORDERED.**