NEW MOON SHIPPING COMPANY, LIMITED and International Marine Investors and Management Corporation, Plaintiffs–Appellants,

v.

MAN B & W DIESEL AG, Defendant–Appellee.

No. 304, Docket 96–7289.

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1996.

Decided June 18, 1997.

Richard H. Sommer, New York City (Victor P. Corso, Kirlin, Campbell & Keating, New York City, of counsel), for Plaintiffs–Appellants.

Christopher H. Mansuy, New York City, (William E. Lakis, Walker & Corsa, New York City, of counsel), for Defendant–Appellee.

Before NEWMAN, Chief Judge, CARDAMONE and McLAUGHLIN, Circuit Judges.

CARDAMONE, Circuit Judge:

Plaintiffs ship owner and its agent brought suit in the United States District Court for the Southern District of New York (Griesa, C.J.) against defendant for breach of contract and negligent repair of a ship. Invoking a forum selection clause that made Germany the litigation forum, defendant moved to dismiss plaintiffs' complaint. Relying on the pleadings, affidavits, and other papers before it, the district court granted the motion on the grounds that (1) the forum selection clause was incorporated by reference into a personnel contract and (2) a prior course of dealings between the parties had incorporated the forum selection clause into a parts contract.

The issue to be decided is whether an enforceable forum selection clause is contained in any one of the four separate repair contracts between defendant MAN B & W Diesel (MAN or appellee) and plaintiff ship owner New Moon Shipping Company through its agent V. Ships (New Moon, V. Ships, and collectively owners or appellants). To resolve this issue, we must determine first whether the owners have met their preliminary burden of showing that the forum selection clause is not part of the contracts; and, second, if they have not met this burden,

whether the clause should be enforced. The owners bear the ultimate burden of proving the forum selection clause was either not part of the contract or was unenforceable; nonetheless, to preserve the issue for either a hearing or resolution at trial, they need only make a *prima facie* showing that such was the case.

We deal on this appeal with the first question, that is, whether a forum selection clause governing the place of trial is contained in the contracts. New Moon and MAN each strongly prefer a different place for litigating the dispute between them. While there may be, as the saying goes, a place for everything, where that place is in this case remains to be decided.

## FACTS

### A. *Formation of the Contracts*

In June 1992 MAN undertook to supervise the overhaul of the M/V ELECTRO STAR's starboard engine and to supply the necessary parts related to that repair, including the replacement of the ship's crankshaft. The ELECTRO STAR's owner, New Moon, through its agent V. Ships, approached MAN after the failure of a bottom end main engine bearing caused irreparable damage to the crankshaft. Replacement of a diesel engine crankshaft is a major undertaking and the owners believed that only MAN—which had manufactured the engine—could provide the necessary expertise and parts.

The work was completed in September 1992. The following spring while the ELECTRO STAR was sailing on the high seas her starboard engine failed after being in use for only three weeks. That engine and other parts of the vessel were extensively damaged. Unable to earn freight or function for charter hire, the ship became virtually a total loss, and was subsequently scrapped. The ship's owners sued MAN for over $5 million, alleging that MAN acted negligently in repairing the ELECTRO STAR's starboard engine and in supervising those repairs, breached its implied warranty of workmanlike performance, and furnished parts unfit for their intended use.

The casualty allegedly resulted from the failure of certain crankshaft or bearing cap bolts. These bolts had been removed from the engine and sent to MAN, which determined they were suitable for reuse, reconditioned them, and supervised their reinstallation. Four contracts were entered into between the owners and MAN for the repair work; these agreements provided for: (1) a new crankshaft and related parts; (2) rebuilding the existing counterweights and a damaged bottom end bearing housing; (3) rebuilding the engine's four remaining bottom end bearing housings; and (4) MAN's supervision over the installation of these new and reconditioned parts in Singapore.

Telexes were exchanged respecting each contract. With respect to contract (1) the owners by telex dated February 20, 1992 asked MAN to furnish price and availability information on a new crankshaft and necessary parts. MAN responded on February 25 with its "original offer," which was "based on our known conditions of delivery." On February 27 New Moon confirmed its order for the new crankshaft. On March 11 MAN forwarded an "original order confirmation" dated March 3, 1992 confirming the order "on the basic terms and conditions of supply for spare parts *known to you.*" (emphasis supplied). On June 5 the owners confirmed their order for the remaining parts listed in MAN's original offer, and MAN replied with a second order confirmation, dated June 15, 1992, using the same language as the March 3 confirmation.

Contract (2) arose after MAN advised New Moon that the existing crankshaft counterweights could be reconditioned for use on the new crankshaft. In a telex of March 5, 1992 MAN offered to remill and match the parts on condition that the existing counterweights and attachment bolts could be used without major reworking. In this telex MAN stated "our offer is based on our INST. 91 Conditions." All the damaged parts were off loaded from the ship that same day and returned to the Hamburg Werks.

Contract (3) progressed in this fashion: after having already sent the damaged housing to MAN for repair, the owners advised MAN on July 10, 1992 that they were sending the four remaining bottom end bearing housings to Hamburg for repair. Ten days later MAN told the owners that overhaul of the four housings had begun. On July 23 MAN sent the owners "repair proposals" for the work it had already undertaken.

The final contract (4) involved a series of nine communications between the parties from May 20 to June 26, 1992. On three occasions MAN confirmed it would send an engineer to supervise the engine repair work. MAN says that, on July 2, 1992, it mailed an order confirmation from Germany that included the forum selection clause for Augsburg, Germany. V. Ships, New Moon's agent, says it never received an order confirmation.

## B. *MAN's Contract Procedures*

Because the existence of the forum selection clause is a threshold issue we set forth the facts regarding MAN's contract procedures in some detail. Up until December 1989 excerpts of MAN's conditions were printed on the reverse side of the offer (or bid) and order confirmation in four languages—German, English, French and Spanish. The excerpts contained no reference to a forum selection clause. They did advise the customer to ask for the unabridged conditions which are set forth in MAN's long forms, "Conditions of Delivery of Spare Parts" and "Conditions for Specialist Personnel Services." In paragraphs XVI and XVII of the respective long forms, jurisdiction of all disputes under the contract is designated as Augsburg, Germany.

In January 1990 MAN changed its procedure for offers and order confirmations. It began using new forms printed by a laser printer which was able to print only the front side of a sheet. No excerpts could be printed on the reverse side and, as a result, the terms and conditions are no longer included on the offer (bid) or confirmation documents. The cover sheet of the order confirmation states: "We thank you for your order which we confirm on the basic terms and conditions for the supply of spare parts known to you." Only when a new client orders parts does MAN forward excerpts of terms and conditions.

MAN says that because it had been doing business with New Moon's agent V. Ships for years—and for three years with regard to the M/V ELECTRO STAR—the basic conditions of the spare parts and personnel services agreements were known to V. Ships. Further, MAN notes, V. Ships never requested a fuller explanation of the basic terms and conditions of the contract.

The owners aver that an invitation to ask for the unabridged conditions does not put it, · as a purchaser, on notice of those conditions not noted in the excerpts and which adversely affect it. New Moon and its agent insist they had no knowledge of the existence of the documents entitled "Conditions of Delivery of Spare Parts" and "INST. 91 Conditions" and that they never agreed to the terms set forth in those documents.

The district court found a forum selection clause had been incorporated by reference into contracts (1) and (4) between New Moon and MAN. Therefore, it dismissed plaintiffs' complaint for lack of subject matter jurisdiction. From this dismissal, owners appeal.

## DISCUSSION

### I  Procedural Mechanisms to Dismiss on Basis of Forum Selection Clause

■ The question of whether to enforce the forum selection clause arose in the context of MAN's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. We observe at the outset that the 12(b)(1) procedural context is somewhat misleading. There is no question that the district court has subject matter jurisdiction over this case. A claim arising out of a contract to repair a ship falls squarely within a federal court's admiralty jurisdiction under 28 U.S.C. § 1333. *New Bedford Dry Dock Co. v. Purdy,* 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922); *see also Sundance Cruises Corp. v. American Bureau of Shipping,* 7 F.3d 1077, 1080–81 (2d Cir.1993) (contract may acquire maritime quality when it pertains to the fitment of a vessel for navigation).

■ Moreover, we have long recognized that parties have no power by private contract to oust a federal court of jurisdiction otherwise obtaining. *Wm. H. Muller & Co.*

*v. Swedish Am. Line, Ltd.,* 224 F.2d 806, 808 (2d Cir.1955) (private agreement that Swedish law would govern disputes under a bill of lading did not destroy court's jurisdiction; "notwithstanding the agreement, the court has jurisdiction"), *overruled on other grounds, Indussa Corp. v. S.S. Ranborg,* 377 F.2d 200 (2d Cir.1967). Because of this, our early cases characterized the mechanism by which a party sought enforcement of a forum selection clause as a "motion to decline jurisdiction." *See generally Wm. H. Muller & Co.,* 224 F.2d at 807; *Hernandez v. Koninklijke Nederlandsche Stoomboot Maatschappij· N.V.,* 252 F.Supp. 652, 653 (S.D.N.Y. 1965); *Transcontinental Commodities, Inc. v. Italnavi Societa Di Navigazione Per Azioni–Genova,* 175 F.Supp. 406, 407 (S.D.N.Y.1959).

■ However, no consensus developed as to the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause. Little consistency exists today between circuits, *see, e.g., Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 956 (10th Cir.1992) (forum selection clauses often analyzed in context of motions to dismiss for improper venue); *LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.,* 739 F.2d 4, 7 (1st Cir.1984) (dismissals based on forum selection clauses should be founded on Rule 12(b)(6) for failure to state a claim); *AVC Nederland B.V. v. Atrium Inv. Partnership,* 740 F.2d 148, 152 (2d Cir.1984) (dismissal sought pursuant to 12(b)(1) motion for lack of subject matter jurisdiction), or even within this Circuit, *compare AVC Nederland,* 740 F.2d at 152, *with Paterson, Zochonis (U.K.) Ltd. v. Compania United Arrows, S.A.,* 493 F.Supp. 626, 629 (S.D.N.Y. 1980) (dismissal for improper venue under 12(b)(3) granted on basis of forum selection clause).

The leading Supreme Court cases have done little to resolve this procedural dilemma. *See M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (unclear whether analysis applied to defendant's motion to dismiss on basis of lack of jurisdiction or *forum non conveniens* ); *Carnival Cruise Lines, Inc. v. Shute,* 499

U.S. 585, 589, 111 S.Ct. 1522, 1525, 113 L.Ed.2d 622 (1991) (enforcement sought through summary judgment motion). As one scholar has observed, there is no easy answer to the enforcement procedure question because there is no existing mechanism with which forum selection enforcement is a perfect fit. *See* Patrick J. Borchers, *Forum Selection Agreements in the Federal Courts After* Carnival Cruise: *A Proposal for Congressional Reform,* 67 Wash. L.Rev. 55 (1992) (recommending a comprehensive federal statute that would streamline enforcement procedures and standards).

The foundational decision of *M/S Bremen,* places the burden on the plaintiff, who brought suit in a forum other than the one designated by the forum selection clause, to make a "strong showing" in order to overcome the presumption of enforceability. This burden we think is analogous to that imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant. The stakes are high in each instance; failure to meet this preliminary burden may foreclose suit in the jurisdiction of plaintiff's choice.

■ However, at the initial stage of litigation, a party seeking to establish jurisdiction need only make a *prima facie* showing by alleging facts which, if true, would support the court's exercise of jurisdiction. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). When analyzing this preliminary showing, the facts must be viewed in the light most favorable to the plaintiff. *AVC Nederland,* 740 F.2d at 149. A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing. *CutCo Indus. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986) (until evidentiary hearing is held, plaintiff need only make a *prima facie* showing of personal jurisdiction); *Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326, 1330 (2d Cir.1972). Because the same risk of loss of plaintiff's chosen forum may be at issue in the forum selection context, a party seeking to avoid enforcement of such a contractual clause is also entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has had an opportunity to be heard.

With these standards in mind, several issues must be considered: (1) whether appellants made a *prima facie* showing that the forum selection clause is not a valid part of the contracts; (2) whether appellants have made a *prima facie* showing that the clause is unreasonable under *M/S Bremen,* thereby precluding its enforcement; and (3) whether the clause is sufficiently broad to cover all of appellants' claims.

## II   The Contractual Validity of the Forum Selection Clause

■ *M/S Bremen* requires us to consider the validity and enforceability of a forum selection clause, giving substantial deference to the parties' selected forum: "The choice of [a] forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *Id.* at 12, 92 S.Ct. at 1914. A forum selection clause is enforceable unless it is shown that to enforce it would be "unreasonable and unjust" or that some invalidity such as fraud or overreaching is attached to it. *Id.* at 15, 92 S.Ct. at 1916.

Appellants insist the forum selection clause is not a valid part of any of the four contracts at issue because V. Ships was unaware of MAN's unabridged conditions and therefore never assented to them. Because *M/S Bremen* dealt with a forum selection clause that came about through open negotiation, the Supreme Court addressed unenforceability in terms of the traditional contract defenses, such as fraud and unreasonableness. New Moon attempts to distinguish its case, insisting that the forum selection clause here was not part of the contracts formed between the parties. In *Carnival Cruise* the Supreme Court alluded to—but did not directly address—issues of contract formation that might arise in the adjudication of a forum selection clause. The Court ruled there that any argument the clause was not part of the contract had been waived.   at 588–90, 111 S.Ct. at 1525. In the instant case, before applying *M/S Bremen* analysis, we must di-

rectly decide whether the contracts included a forum selection clause.

' In light of the order confirmation purportedly sent to New Moon's agent, which incorporated by reference MAN's unabridged terms and conditions, the district court ruled that the owners had consented to the forum selection clause in the personnel contract (4). Further, based on the prior course of dealings between MAN and V. Ships, which involved documents that incorporated the same terms and conditions, the trial court also ruled that New Moon had agreed to the same clause in the parts contract (1).

### A. *Personnel Contract*

■ We begin our analysis with the contract most recently formed, the personnel contract (4), since the district court relied heavily upon it as the basis for its decision. It concluded that MAN's unabridged conditions, including the forum selection clause, were part of an order confirmation sent to appellants and therefore were part of that contract.

V. Ships submitted an affidavit from its fleet manager stating that it never received a copy of the unabridged conditions or the reconfirmation of its order that MAN allegedly sent. The trial judge found this evidence "unconvincing" and determined "that V. Ships did in fact receive these documents." The trial court then determined that V. Ships agreed to the forum selection clause included in the terms and conditions sheet. However, its decision to· disbelieve the factual assertions set forth by V. Ships—one that ultimately turns on the credibility of the opposing parties—was made without an evidentiary hearing. We agree with appellants that, at a minimum, a hearing should have been held at which they could have presented the testimony of the V. Ships fleet manager and cross-examined MAN's witness who stated that the conditions form had been sent to V. Ships.

### B. *Parts Contract*

■ The district court also found that the owners were aware of and, by continuing to do business with MAN, consented to MAN's standard terms and conditions in the parts contract (1). This finding was based on the "plain language, both in earlier dealings and in the transaction at issue, that [advised V. Ships that] defendant considered its full standard terms and conditions to be included in the contractual terms." In the parts contract, MAN sent an offer that included the clause "based on our known conditions of delivery" and later a confirmation order that confirmed V. Ships' order "on the basic terms and conditions of supply for spare parts known to you."

■ We recognize that maritime contracts may validly incorporate by reference terms from other documents or agreements. *See, e.g., Son Shipping Co. v. De Fosse & Tanghe,* 199 F.2d 687, 688 (2d Cir.1952). Under general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt. *See* 4 *Williston on Contracts* § 628, at 903–04 (3d ed.1961).

Although it has been held that language similar to that at issue here was part of a "crystal clear" incorporation-by-reference clause, *see American Dredging Co. v. Plaza Petroleum Inc.,* 799 F.Supp. 1335 (E.D.N.Y. 1992), the general language in that case did not stand by itself. In the clause at issue in *American Dredging,* the name of the incorporated document, "Terms and Conditions of Sale of Petroleum Products," was highlighted by quotation marks and followed by the phrase "issued by Plaza Petroleum, Inc. which is available for review upon request." *American Dredging Co.,* 799 F.Supp. at 1338. Unlike the clause employed by MAN in its current offer and confirmation forms, the general language in *American Dredging* was supplemented to place the contracting party on notice that it was referring to a particular document. We think the plain language of the offer and confirmation forms in the case at hand is too ambiguous to incorporate by reference MAN's unabridged conditions form.

Because the unabridged conditions were not incorporated by reference into the parts contract at issue, the district court properly looked to the prior course of dealings be-

tween the parties to determine the parties' contractual intent. Appellants contend that they never knew that the reference to "our conditions of delivery" and "conditions of delivery of spare parts" referred to anything beyond the conditions specified on the confirmation form. MAN argues that the owners should have known that this phrase referred to the unabridged terms and conditions based upon MAN's pre–1990 confirmation forms, which referred generally to the unabridged document.

■ Evidence of a prior course of dealing may establish a party's awareness of and consent to intended contractual terms. *See Restatement (Second) of Contracts* § 223 (1979) (sequence of previous conduct between the parties may establish a common basis of understanding for interpreting their expressions and other conduct). Typically, a course of dealings analysis focuses on the actions of the parties with respect to a specific issue that the parties may have encountered before. On this basis, a factfinder could reasonably infer that the parties have impliedly incorporated this understanding into their subsequent contracts. *See Tankers and Tramps Corp. v. Tugs Jane McAllister and Margaret M. McAllister*, 358 F.2d 896, 899 (2d Cir.1966) ("If prior dealings between the parties involving the clause were proved, an inference that it was a term of this contract might be justified.").

■ We have extended this doctrine beyond prior dealings involving actual disputes to include evidence that a party has ratified terms by failing to object. *Pervel Indus. v. T M Wallcovering, Inc.*, 871 F.2d 7 (2d Cir.1989). Specifically, terms repeated in a number of written confirmations may, over time, become part of later contracts. Where "a manufacturer has a well-established custom of sending purchase order confirmations containing an arbitration clause, a buyer who has made numerous purchases over a period of time, receiving in each instance a standard confirmation form which it either signed and returned or retained without objection, is bound by the arbitration provision." *Id.* at 8.

■ A course of dealings analysis does require, of course, an indication of the common knowledge and understanding of the parties. That understanding may be inferred from the resolution of a prior dispute between the parties or from tacit acceptance of a clause repeatedly sent to the offeree in an order confirmation document. An inference of the parties' common knowledge or understanding that is based upon a prior course of dealings is question of fact. *See Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 395 (7th Cir. 1992).

In the instant case, the question is whether the pre–1990 forms, the back of which included the excerpted conditions, established a common understanding between the parties with regard to the incorporation of the unabridged conditions. MAN avers the unabridged conditions were incorporated by reference into these order confirmations, which stated on their face that the owners' orders were based upon conditions of delivery, "excerpts printed on the back hereof." Moreover, at the beginning of the excerpts, the form invited purchasers to "[p]lease ask for unabridged Conditions of Delivery." MAN contends that such an invitation is sufficient to have placed appellants on notice of the unabridged conditions even though they may not have actually seen or expressly agreed to them. *American Dredging*, 799 F.Supp. at 1338.

MAN's argument appears to be consistent with the rule we set forth in *Pervel*, which interpreted a party's lack of objection to a provision repeatedly included on the face of an order confirmation as a binding term in later contracts. However, we are reluctant to extend that rule to these facts for several reasons. First, the working relationship between MAN and appellants is significantly more complicated than those in *Pervel*, where the two parties repeatedly engaged in the same transaction. V. Ships contracted with both MAN Augsburg and MAN Hamburg for three types of transactions: the purchase of new parts, personnel services, and the reconditioning of parts. Although both MAN entities purport to have unabridged conditions applicable to their contracts with V. Ships, their offer and order confirmation practices appear to vary.

Second, *Pervel*'s inference of acquiescence on the basis of a party's lack of objection to a repeated conspicuous condition is a more confident step than the leap required to draw such an inference here. Although the order confirmation form makes clear that unabridged conditions exist, review of the excerpts suggests that, in general, the conditions most likely to be adverse to the purchaser are found there. This notion is reinforced by the inclusion of a choice-of-law provision, a condition closely-related and often found in conjunction with a forum selection clause, in the excerpts. We are reluctant to decide, based upon the record before us, that as a matter of law the owners should have had knowledge of the forum selection clause in MAN's unabridged conditions based upon its pre–1990 dealings with MAN. Moreover, even if the pre–1990 confirmation forms effectively incorporated the unabridged conditions, a question of fact would remain as to whether the post–1990 transactions were part of a continuous course of dealing between the parties.

Nor do we think, third, that appellants' receipt of the unabridged conditions for the personnel contract can serve as the basis for finding a prior course of dealings between the parties, as the district court found. That court's analysis is flawed because, as noted above, in the absence of an evidentiary hearing, it cannot properly rely on the assertion by MAN that V. Ships received the unabridged terms and conditions to support its dismissal when that assertion is disputed. In addition, MAN sent the order confirmation that referred to its standard terms and conditions on July 2, 1992, at a time when the parts transactions governed by contract (1) had already been completed the previous month.

MAN offers evidence to support its contention that the agent V. Ships understood the unabridged conditions to be incorporated into both the personnel and parts contracts; but our review is limited to the question of whether appellants made a *prima facie* showing that they did not agree to the unabridged conditions. We believe they have.

## C. *The Reconditioning Contracts*

The trial court did not address the reconditioning contracts (2) and (3) in its analysis of the forum selection clauses. In the offer which served as the basis for contract (2), MAN Hamburg specifically referred to "INST. 91 Conditions." These conditions include a forum selection clause designating Hamburg, Germany as the agreed upon location of any litigation arising out of the contract. Whether the conditions form was incorporated into the offer that appellants subsequently accepted so as to bind appellants to its forum selection clause is an issue the trial court should resolve on remand. Further, neither party made reference to any terms and conditions applicable to the reconditioning of the four bottom end bearing housings which was the subject of contract (3). Yet, MAN's prior offer to repair the damaged bottom end housing, dated May 18, 1992, was based on the INST. 91 Conditions. Whether the parties intended the same terms to apply to the subsequent repair is also a question to be determined on remand.

## III The Enforceability of the Forum Selection Clause

Appellants argue that even if the forum selection clause is a valid part of the contract, that clause should not be enforced. The party claiming unreasonableness of a forum selection clause bears a heavy burden; in order to escape the contractual clause, he must show "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917.

New Moon declares that enforcement of the forum selection clause is unreasonable because the suit may be time-barred in the selected forum of Germany. Federal courts have divided on the issue of whether the unreasonableness exception to enforcement of a forum selection clause demands consideration of a limitations bar. *Compare General Elec. Co. v. G. Siempelkamp GmbH & Co.,* 809 F.Supp. 1306, 1314 (S.D.Ohio 1993) (application of statute of limitations not considered when determining reasonableness of fo-

rum selection), *aff'd*, 29 F.3d 1095 (6th Cir. 1994), *with Krol v. AAMCO Transmissions, Inc.*, 1991 WL 276006 (E.D.Pa.1991) (enforcement unreasonable where forum's statute of limitations bars plaintiff's contract claims). The language used in the Supreme Court opinions focuses on the inconvenience of the chosen forum rather than the effect of applying the law of the chosen forum. At the same time, consideration of a statute of limitations would create a large loophole for the party seeking to avoid enforcement of the forum selection clause. That party could simply postpone its cause of action until the statute of limitations has run in the chosen forum and then file its action in a more convenient forum.

We need not resolve this issue of first impression at this preliminary stage. Moreover, the district court need only reach the issue if it concludes, on remand, that a forum selection clause is included in at least one of the contracts at issue. Thus far, appellants have offered only unsubstantiated speculation that no remedy is available in the designated forum. This is wholly inadequate to meet the heavy burden appellants bear to show unreasonableness. *Cf. Paterson, Zochonis*, 493 F.Supp. at 630 (parties submitted affidavits from Japanese law experts on question of how that law would affect plaintiff's claims). However, appellants are free to introduce additional evidence to support their claim of unreasonableness before the district court.

### IV   The Scope of the Forum Selection Clause

#### A.   *Claims Arising Out of the Other Contracts*

The scope of the forum selection clause is a contractual question that requires the courts to interpret the clause and, where ambiguous, to consider the intent of the parties. On remand, the district court should hold an evidentiary hearing to determine whether the remaining contracts (2) and (3) include a forum selection clause. If it concludes that not all of the contracts included such a clause, it must determine whether the contractual claims pertaining to the contracts lacking the clause are subject to the valid forum selection clause(s), if any, contained in the other contracts.

#### B.   *Tort-based Claims*

Appellants maintain the forum selection clause does not extend to the tort-based claims set forth in their complaint. Following the tort claim argument to its logical conclusion, they reason that the district court erred in dismissing the tort-based claims on the basis of the forum selection clause because the tort claims provide an independent basis for admiralty jurisdiction. Appellants did not raise this issue below, and the district court made no distinction between tort-based and contract-based claims in its disposition of the case. We write in order to focus the issue for the district court on remand.

Whether the owners have alleged a maritime tort does not definitively resolve the issue. The more pressing question is whether the district court should properly exercise jurisdiction over these claims in the face of a valid forum selection clause. In other words, the appropriate inquiry is whether the scope of the forum selection clause extends to tort-based claims arising in conjunction with the contract claims governed by the forum selection clause(s). We leave analysis of the *scope* of the forum selection clause(s) in the first instance to the district court, if necessary, after its consideration of the incorporation and the validity of the clauses in the four contracts.

### CONCLUSION

We conclude the district court erred in construing facts in a manner adverse to the appellants prior to an evidentiary hearing on the forum selection clauses in contracts (1) and (4).

The judgment of dismissal is reversed and remanded for further proceedings consistent with this opinion.