Pasha S. ANWAR, et al., Plaintiffs,

v.

**FAIRFIELD GREENWICH LIMITED,**
et al., Defendants.

Nos. 09 Civ. 0118, 09 Civ.
2410, 09 Civ. 9423.

United States District Court,
S.D. New York.

Sept. 14, 2010.

David A. Barrett, Boies, Schiller & Flexner, LLP, Christopher Lovell, Victor E. Stewart, Jody Krisiloff, Lovell Stewart Halebian Jacobson LLP, William M. O'Connor, Crowell & Moring LLP, Carl Lester Stine, Chet Barry Waldman, James Abram Harrod, III, Robert Craig Finkel, Wolf Popper LLP, Brian Dale Graifman, David Alan Gehn, Gusrae, Kaplan, Bruno & Nusbaum, PLLC, Catherine A. Torrell, Cohen Milstein Sellers & Toll P.L.L.C., Jean Lee, Kent Andrew Bronson, Kristi Stahnke McGregor, Robert Alan Wallner, Milberg LLP, Daniel W. Krasner, Demet Basar, Gregory Mark Nespole, Wolf Haldenstein Adler Freeman & Herz LLP, David Robert Kromm, Hillary Sobel, Jeffrey Charles Zwerling, Robert S. Schachter, Stephanie Elizabeth Kirwan, Stephen Leland Brodsky, Zwerling, Schachter & Zwerling, David J. Molton, Martin S. Siegel, Brown Rudnick Berlack Israels, LLP, Joseph Emanuel Neuhaus, Sullivan and Cromwell, LLP, New York, NY, Paul Edouard Dans, Rivero Mestre & Castro, Jeffrey F.D. Bogert, Bogert & Rembold, P.L., Laurence Edward Curran, III, Curran & Associates, Coral Gables, FL, David Alan Rothstein, Jeffrey Brett Kaplan, Lorenz Michel Pruss, Robert E. Linkin, Dimond Kaplan & Rothstein, Coconut Grove, FL, Richard E. Brodsky, The Brodsky Law Firm, Miami, FL, Sashi Bach Boruchow, Stuart Harold Singer, Boies, Schiller & Flexner LLP, Fort Lauderdale, FL, Matthew W. Cheney, Crowell & Moring LLP, Daniel S. Sommers, Joshua Seth Devore, Steven Jeffrey Toll, Cohen Milstein Sellers & Toll PLLC, Washington, DC, for Plaintiffs.

ABN Amro Life S.A., pro se.

Mark Geoffrey Cunha, Michael Joseph Chepiga, Paige Elizabeth Fleming, Paul Jacob Sirkis, Peter Eric Kazanoff, Sara Ann Ricciardi, Simpson Thacher & Bartlett LLP, Glenn Kurtz, White & Case LLP, Andrew J. Levander, David Scott Hoffner, Jennie Boehm Krasner, Dechert, LLP, Adam K. Grant, Daniel R. Benson, Daniel J. Fetterman, Marc E. Kasowitz, Kasowitz, Benson, Torres & Friedman, LLP, Helen Virginia Cantwell, Mark P. Goodman, DeBevoise & Plimpton, LLP, Eliot Lauer, Michael Joseph Moscato, Timothy Neil McCabe, Curtis, Mallet–Prevost, Colt & Mosle, LLP, Andrew M. Genser, Amy E. Crawford, Kirkland & Ellis LLP, Gabrielle Sean Marshall, Sarah Loomis Cave, William R. Maguire, Hughes Hubbard & Reed LLP, Edward M. Spiro, Robert James Anello, Claudio Godinez Roumainochoa, Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., Jonathan David Cogan, Michael Sangyun Kim, Kobre & Kim LLP, Sharon L. Nelles, Allison Caffarone, Bradley Paul Smith, Diane Lee McGimsey, Patrick Barrett Berarducci, Sullivan & Cromwell, LLP, New York, NY, Amanda McGovern, Dyanne Eyce Feinberg, Elizabeth A. Izquierdo, Lewis Nathan Brown, Terence Michael Mullen, Gilbride Heller & Brown P.A., Hilarie Bass, Ricardo A. Gonzalez, Greenberg Traurig, Miami, FL, Brenton Rogers, Emily Nicklin, Timothy A. Duffy, Kirkland & Ellis LLP, Chicago, IL, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

This action concerns investment recommendations made by the Singapore branch of a United Kingdom bank to residents of Dubai pursuant to contracts containing Singapore forum selection clauses. For the reasons discussed below, the Court finds that the forum selection clauses in the contracts are binding on some of the parties and that this Court is therefore an inappropriate forum for adjudicating these disputes.

## I. BACKGROUND

Plaintiffs in this case comprise two groups. The first group—Jitendra Bhatia, Gopal Bhatia, Kishanchand Bhatia, Jayshree Bhatia, and Mandakini Gajara (collectively, "Bhatia Plaintiffs")—filed an Amended Complaint on September 18, 2009 ("Bhatia Complaint"). The second group—Tradewaves Ltd., Parasram Daryani, Neelam P. Daryani, Vika P. Daryani, Nikesh P. Daryani, Ashokkumar Damodardas Raipancholia, Dilip Damodardas Raipancholia, Rajeshkumar Damodardas Raipancholia, Kishu Nathurmal Uttamchandani, Prerna Vinod Uttamchandani, Rajendrakumar Patel, Vandna Patel, Arjan Mohandas Bhatia, Kishin Mohandas Bhatia, Suresh M. Bhatia, Bharat Mohandas, and Aarvee Ltd. (collectively, "Tradewaves Plaintiffs") (together with the Bhatia Plaintiffs, "Plaintiffs")—filed a Complaint on November 11, 2009 (together with the Bhatia Complaint, "Complaints"). Unless otherwise noted, the factual recitation below is drawn solely from the Complaints.

The defendants named in the Complaints are Standard Chartered International (USA) Ltd. and Standard Chartered PLC (together, "Standard Chartered"). Standard Chartered International (USA) Ltd., a corporation organized under the laws of Connecticut with its principal place of business in New York, New York, is a successor in interest and name to American Express Bank, Ltd. Standard Chartered PLC, incorporated in the United Kingdom with a place of business in New York, New York, is the parent corporation of Standard Chartered International (USA) Ltd.

The Bhatia Plaintiffs are residents of Dubai in the United Arab Emirates who maintained three accounts with Standard Chartered. The Tradewaves Plaintiffs comprise fourteen individual residents of Dubai and two British Virgin Islands investment holding companies with their principal places of business in Dubai that maintained nine separate accounts with Standard Chartered.

Plaintiffs' points of contact at Standard Chartered were three individuals: Surendran Menon ("Menon"), Biswaroop Barua ("Barua"), and Mortezah Farzaneh ("Farzaneh"). Plaintiffs allege that Standard Chartered recommended investment in Fairfield Sentry Ltd. ("Fairfield Sentry"), a feeder fund incorporated in the British Virgin Islands and operated by the Fairfield Greenwich Group, which was in turn invested in Bernard L. Madoff Investment Securities, a now-notorious Ponzi scheme that was based in New York City. Plaintiffs invested various amounts of money in Fairfield Sentry and contend that Standard Chartered recommended Fairfield Sentry without having conducted any due diligence on the fund. By doing so, Plaintiffs allege. Standard Chartered acted recklessly and violated a number of duties owed to Plaintiffs.[1]

The Bhatia Plaintiffs also allege that Standard Chartered recommended investment in bonds issued by Lloyds TSB. These bonds were later converted from debt instruments to preferred shares, which resulted in a diminution of their value. The Bhatia Plaintiffs allege that Standard Chartered failed to properly advise the Bhatia Plaintiffs about the risks associated with these bonds.

Though the Complaints are careful not to mention this fact, Standard Chartered has submitted information to the Court asserting that all of Plaintiffs' accounts were opened and maintained at the Singapore Branch of Standard Chartered Bank, or at the Singapore Branch of American Express Bank Ltd., which was acquired by Standard Chartered in 2008. (*See* Declaration of Bharat Vijayan, dated May 10, 2010 ("Vijayan Decl."), ¶¶ 2, 18.) Menon worked at all times at the Dubai branch of American Express Bank Ltd. (*See* Vijayan Decl. ¶ 4.) Barua worked at all times at the Singapore branch of American Express Bank Ltd., later of Standard Chartered. (*See id.*) Farzaneh worked at the Dubai branch of American Express Bank Ltd. until mid–2005 and then worked at the Singapore branch. (*See id.*) Plaintiffs have not disputed that their accounts were opened and maintained in Singapore, that Standard Chartered acquired American Express Bank Ltd. in 2008, or that their primary contacts with Standard Chartered, Menon, Barua, and Farzaneh, were based in Dubai and Singapore.

## II. DISCUSSION

Standard Chartered moved to dismiss the Complaints on a number of grounds, including the existence of a mandatory forum selection clause, forum non conveniens, and failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Because the Court grants Standard Chartered's motion based on the forum selection clause and forum non conveniens, the Court will not consider the Rule 12(b)(6) arguments.

### A. FORUM SELECTION CLAUSE

Though Standard Chartered brings its motion to dismiss under Fed.R.Civ.P.

---

1. Pursuant to the Order of the Judicial Panel on Multidistrict Litigation issued in MDL No. 2088, this case has been consolidated into a number of other lawsuits concerning the fallout of Bernard Madoff's Ponzi scheme.

12(b)(3) based on the forum selection clause, neither the Supreme Court nor the Second Circuit Court of Appeals has "specifically designated a single clause of Rule 12(b) as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause." *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir.2006) (quotation marks omitted); *see also New Moon Shipping Co. Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir.1997) ("[T]here is no existing mechanism with which forum selection enforcement is a perfect fit."); *TradeComet.com, LLC v. Google, Inc.*, 693 F.Supp.2d 370, 375 (S.D.N.Y.2010) (noting "split of authority in the Second Circuit regarding the appropriate procedural mechanism by which to enforce a forum selection clause").

The Second Circuit has, however, made clear that "where one party has shown an apparently governing forum selection clause, the party opposing litigation in the so designated forum must make a strong showing to defeat that contractual commitment." *Asoma Corp.*, 467 F.3d at 822. In particular, "[d]etermining whether to dismiss a claim based on a forum selection clause involves a four-part analysis." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir.2007). First, the Court must inquire "whether the clause was reasonably communicated to the party resisting enforcement." *Id.* The Court must then decide whether the clause is "mandatory or permissive, *i.e.*, ... whether the parties are required to bring any dispute to the designated forum or simply permitted to do so." *Id.* (emphasis removed). Third, the Court considers "whether the

claims and parties involved in the suit are subject to the forum selection clause." *Id.* If these three considerations favor enforcing the clause, "it is presumptively enforceable." *Id.* The party resisting enforcement then has the burden on the fourth step of making a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 384 (quotation marks omitted).

In making this four-part determination, the Court may rely on "pleadings and affidavits."[2] *Tropp v. Corp. of Lloyd's*, 385 Fed.Appx. 36, 37 (2d Cir.2010) (*quoting Altvater Gessler–J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir.2009)); *see also New Moon*, 121 F.3d at 26 (noting that district court reviewed "pleadings, affidavits, and other papers"); *TradeComet.com LLC*, 693 F.Supp.2d at 375, n. 3 ("In deciding a motion to dismiss [due to a forum selection clause] pursuant to either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3), a court may consider evidentiary matters outside the pleadings, by affidavit or otherwise, regarding the existence of jurisdiction.") (quotation marks omitted). In conducting this review, "[a] disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing." *New Moon*, 121 F.3d at 29.

The parties have submitted a variety of documents in support of their opposing positions on the applicability of the forum selection clauses at issue here. Standard Chartered has submitted copies of the various agreements that they argue bind the

---

**2.** The Court notes that the parties nowhere address what documents may be considered on a motion to dismiss based on a forum selection clause, instead expending their energies on what the Court may properly consider outside of the complaint on a motion to dismiss under Rule 12(b)(6). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (exploring "the question of what documents a district court may consider when disposing of a Rule 12(b)(6) motion.")

parties.[3] Plaintiffs have submitted affidavits from two of the individual plaintiffs—one of the Bhatia Plaintiffs and one of the Tradewaves Plaintiffs—detailing Plaintiffs' interactions with some of the agreements proffered by Standard Chartered. As these documents differ for the Bhatia and Tradewaves Plaintiffs, the Court will first consider the Bhatia Plaintiffs' situation.

### 1. *Bhatia Plaintiffs*

■ The first agreement submitted by Standard Chartered that binds the Bhatia Plaintiffs is a Private Bank Account Application ("Application") for each of the three accounts opened by the Bhatia Plaintiffs. (*See* Vijayan Decl., Exs. C, D, E.)

The Bhatia Plaintiffs do not dispute completing the Applications, and signed copies of the Applications appear in Standard Chartered's submission. The Applications note that "[a]ll transactions to be concluded by [the Bhatia Plaintiffs] with or through [Standard Chartered] shall be subject to the terms and conditions of this account application and the Private Banking Services Agreement." (*Id.*, Exs. C, D, E at 3.) In turn, the Private Banking Services Agreements ("Agreements") specify that "[t]he terms set out herein and any additional terms notified in writing by [Standard Chartered] to the [Bhatia Plaintiffs] may from time to time be amended, modified or supplemented by [Standard Chartered]. Such amendments, modifications and supplements shall come into effect on the date specified by [Standard

Chartered], and copies shall be sent to the [Bhatia Plaintiffs]." (*Id.*, Ex. O at 1.)

The Agreements were amended in September 2006. (*See id.*, Ex. P.) Both the original and amended Agreements contain identical forum selection and governing law clauses: "This Agreement shall be governed by and construed in accordance with the laws of Singapore and the Customer hereby irrevocably submits to the jurisdiction of the Singapore courts, provided that such jurisdiction, at the sole option of [Standard Chartered], shall not be exclusive." (*Id.*, Ex. O at 9, Ex. P at 12.)

Finally, the Agreements were modified after Standard Chartered acquired American Express Bank Ltd. in 2008. By letter dated September 3, 2008, Standard Chartered sent the Bhatia Plaintiffs a copy of the amended agreement, termed the Standard Charter Private Bank General Terms and Conditions ("T & Cs"), to be generally effective October 3, 2008. As the Agreements did, the T & Cs contained a Singapore forum selection clause: "the Client submits to the exclusive jurisdiction of the courts of Singapore to settle any dispute arising out of or in connection with these [T & Cs], any Account, Transaction, or any Service (including a dispute regarding the existence, validity or termination of any agreement)." (*Id.*, Ex. A, App. 1: Singapore Country Supplement, ¶ A, § 7.1.)

Of all the documents, the Bhatia Plaintiffs dispute the validity of only the T & Cs. By declaration, plaintiff Jitendra Bha-

---

3. Plaintiffs argue these documents are not properly authenticated because they are exhibits in a declaration prepared by Bharat Vijayan, a Senior Director at Standard Chartered, who lacks personal knowledge of every detail surrounding the documents. As the Vijayan Decl. notes that Vijayan "had an opportunity to examine the accounts held by [P]laintiffs" and to review "accounts and the agreements governing those accounts," the

Court is satisfied that the documents are properly authenticated. *See In re Worldcom, Inc.*, 357 B.R. 223, 229 (S.D.N.Y.2006) ("Authentication need not ... be by someone with personal knowledge of the underlying events described in the document, the substance or accuracy of the document, and the methods of calculation.... [A]uthentication only requires a showing that the document is what it purports to be.").

tia explains that, until he saw Standard Chartered's motion to dismiss, he "had never signed or agreed to the terms of the T & Cs. Similarly, [he] understand[s] that none of [the Bhatia Plaintiffs] signed or agreed to the terms of the T & Cs." (Declaration of Jitendra Bhatia, dated May 2, 2010, ¶ 9.) By contrast, in the same declaration, Jitendra Bhatia notes that he "did not receive" copies of documents related to Fairfield Sentry, (*id.* ¶ 7), and never "received or s[aw]" documents relating to the Lloyds' bonds. (*Id.* ¶ 8.)

Nevertheless, based on this material, the Court finds that the forum selection clauses contained in the T & Cs are binding on the Bhatia Plaintiffs. First, the T & Cs were "reasonably communicated" to the Bhatia Plaintiffs. The record contains copies of the signed Applications for the Bhatia Plaintiffs and there is no dispute that the Agreements were received by the Bhatia Plaintiffs. The only dispute surrounds the T & Cs, which Jitendra Bhatia notes he never "signed or agreed to." But Jitendra Bhatia does not contend that he did not "receive" the T & Cs, as he does in the two preceding paragraphs of his declaration in reference to other documents. Jitendra Bhatia's failure to "sign[ ] or agree[ ]" to the T & Cs is irrelevant: the language of the Agreements allowed Standard Charted to unilaterally amend the Agreements because they noted that the contract "may from time to be amended, modified or supplemented by [Standard Chartered]," not by mutual consent of each party. (Vijayan Decl., Ex. O at 1.)

Next, the forum selection clause in the T & CS is exclusive as it refers to "the exclusive jurisdiction of the courts of Singapore." (*Id.*, Ex. A, App. 1: Singapore Country Supplement, ¶ A, § 7.1); *see Wells Fargo Century, Inc. v. Brown,* 475 F.Supp.2d 368, 372 (S.D.N.Y.2007) (noting that " 'shall' or 'exclusive' . . . [is] typically

employed in mandatory forum selection clauses."). Third, this dispute about Standard Chartered's diligence in investigating Fairfield Sentry and its representations about Fairfield Sentry and the Lloyds' bonds is covered by the forum selection clauses, which are broadly worded to encompass "any dispute arising out of or in connection with these [T & Cs], any Account, Transaction, or any Service." (Vijayan Decl., Ex. A, App. 1: Singapore Country Supplement, ¶ A, § 7.1.)

This analysis places the burden of refuting the presumptively-enforceable forum selection clause on the Bhatia Plaintiffs. The Court is not persuaded by their all-but-the-kitchen-sink attempts to refute the forum selection clause. First, the Bhatia Plaintiffs contend that the forum selection clauses were illegible as printed in the T & Cs because the typeface used was too small. But review of the T & Cs without a magnifying glass reveals that the forum selection clause was printed in the same size typeface as the rest of the document, preceded by a bold heading of "Enforcement and Jurisdiction of Singapore Courts," and not otherwise obscured.

Next, the Bhatia Plaintiffs argue that the change in terms was unilateral, as if unilateral amendments are per se unenforceable in all instances. They are not. *See, e.g., Stone v. Golden Wexler & Sarnese, P.C.,* 341 F.Supp.2d 189, 195 (E.D.N.Y.2004) (unilateral amendments allowed so long as the "universe of terms which could be altered or affected" is contemplated in the change-in-terms clause); *Perry v. FleetBoston Fin. Corp.,* No. 04–507, 2004 WL 1508518, at *4, 2004 U.S. Dist. LEXIS 12616, at *12 (E.D.Pa. July 6, 2004) (applying Rhode Island law to hold that unilateral changes in terms are allowed for "those terms already contained or contemplated in the original agreement"). If it can even be said there was a

change in terms here, given that the Agreements also contained a Singapore forum selection clause, unilateral amendments were allowed by the Agreements.

The Bhatia Plaintiffs then argue that the amendments were made retroactively, a contention flatly contradicted by the cover letter enclosed with the T & Cs specifying a prospective effective date. (*See* Vijayan Decl., Ex. Q.) Finally, the Bhatia Plaintiffs argue that the T & Cs were promulgated two months before Madoff's confession of fraud and that this suggests Standard Chartered somehow knew Madoff was a fraud and took steps to insulate themselves from liability. The Court rejects this example of pleading prescience or paranoia as unsupported by any of the material the Bhatia Plaintiffs have submitted.

Accordingly, the Court finds that the Singapore forum selection clause binds the Bhatia Plaintiffs and grants Standard Chartered's motion to dismiss as against the Bhatia Plaintiffs.

### 2. *Tradewaves Plaintiffs*

■ But for one crucial wrinkle, a similar analysis and result applies to the Tradewave Plaintiffs. The Tradewaves Plaintiffs opened a total of nine accounts with Standard Chartered, and all but one of them have an identical chain of contracts from Applications to Agreements to T & Cs. (*See* Vijayan Decl., Exs. G–N.) The final account was opened by plaintiffs Prerna Vinod Uttamchandani and Kishu Nathurmal Uttamchandani (together, "Uttamchandanis") in September 2008 after Standard Chartered had acquired American Express Bank Ltd. and the relevant account application bound the account holder directly to the T & Cs. (*See id.,* Ex.

B. ("Standard Chartered Account Application") at 3 (the undersigned "agrees to the General Terms and Conditions").) As noted above, both the Agreements and the T & Cs contained a Singapore forum selection clause.

In the instant dispute, the Tradewaves Plaintiffs dispute the effect of only the T & Cs. In a declaration dated May 3, 2010, Harish Rupani ("Rupani Decl.") notes that, until he reviewed Standard Chartered's motion, he "had never seen and did not agree to the terms of the [T & Cs]. Similarly [he] understand[s] that none of [the Tradewaves Plaintiffs] sign[ed] or agree[d] to the terms of the T & Cs." (Rupani Decl., ¶ 8.) This statement differs in a significant way from Jitendra Bhatia's: while Jitendra Bhatia merely disclaims signing or agreeing to the T & Cs, Rupani says he and his co-plaintiffs never saw the documents at all. Though Standard Chartered avers by way of the Vijayan Declaration that the T & Cs were mailed to all of the Tradewaves Plaintiffs, (*see* Vijayan Decl. ¶ 20), the Court must construe any disputed facts in Plaintiffs' favor and will proceed as if the Tradewaves Plaintiffs never received the T & Cs. *See New Moon,* 121 F.3d at 29.

If the Tradewaves Plaintiffs never received the T & Cs it is fair to say that the T & Cs were not "reasonably communicated" to them and therefore the first factor of *Phillips* would not be satisfied. However, even if the T & Cs are removed from the equation, the Tradewaves Plaintiffs must still contend with the forum selection clauses contained in the Agreements, which none of the Tradewaves Plaintiffs dispute receiving or argue should not apply to them.[4] The Court thus finds that

4. The Court also notes the contradiction between Rupani's statement that none of the Tradewaves Plaintiffs had seen the T & Cs

before Standard Chartered's motion to dismiss and the Uttamchandani's Standard Chartered Account Application which notes

the Private Banking Services Agreement was reasonably communicated to the Tradewaves Plaintiffs.[5]

The second *Phillips* factor is also satisfied here because the forum selection clause notes that the Tradewaves Plaintiffs "irrevocably submit[ted] to the jurisdiction of the Singapore courts, provided that such jurisdiction, at the sole discretion of [Standard Chartered], shall not be exclusive." (Vijayan Decl., Ex. P at 12.) The Court is persuaded that such "irrevocabl[e] submi[ssion] is a mandatory forum selection clause."

The third *Phillips* factor also favors enforcement of the forum selection clause. The Agreements' forum selection clauses are less clear than the T & Cs and do not explicitly delineate the disputes to which they apply, instead being joined with the governing law clause as follows: "This Agreement shall be governed by and construed in accordance with the laws of Singapore and the [Tradewaves Plaintiffs] hereby irrevocably submit[ ] to the jurisdiction of the Singapore courts . . ." (*Id.*) Even were the Court to construe the forum selection clause as narrowly as possible and limit its application only to disputes arising from the Private Banking Services Agreement, the Court finds that this dispute—involving recommendations by Standard Chartered about how to best invest funds in the Tradewaves Plaintiffs' accounts—arises from the Agreement, which, together with the Application, "governs [the Tradewaves Plaintiffs'] relationship with the Bank as a customer of the Bank . . . in relation to the private banking services." (*id.* at 1.)

Finally, the fourth *Phillips* factor is satisfied as Plaintiffs have made no argument that the Agreements are invalid.

Accordingly, the Court grants Standard Chartered's motion to dismiss based on the Singapore forum selection clause as against the Tradewaves Plaintiffs.

## B. *FORUM NON CONVENIENS* [6]

The Court also notes that it would dismiss this lawsuit on grounds of forum non conveniens grounds. "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the

that the Uttamchandanis "agree[d] to the [T & Cs]." Given this contradiction in the Tradewaves Plaintiffs' own material, the Court finds that the Standard Chartered Account Application—which appears in the record signed by the Uttamchandanis—is more persuasive than Rupani's vague statement that none of the Tradewaves Plaintiffs, including the Uttamchandanis, agreed to the T & Cs.

5. The Court also notes here that because the Complaints allege that Standard Chartered acquired American Express Bank Ltd., which was the original party to the Agreements, Standard Chartered is a successor to the Agreements and the terms of the Agreements apply to Standard Chartered. Plaintiffs, in their exhaustive arguments about why none of the forum selection clauses in any of the various agreements apply to them, nowhere even hint that Standard Chartered did not assume the Agreements.

6. Plaintiffs' argument that Standard Chartered, by supporting pre-trial consolidation in this Court of other cases filed against Standard Chartered in other districts, waived any forum nons conveniens arguments is irrelevant. The Court possess "inherent power" to dismiss actions on forum non conveniens grounds. *Gilbert*, 330 U.S. at 502, 67 S.Ct. 839. *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (federal court's "inherent power" allows it to "dismiss an action on grounds of *forum non conveniens*."); *In re Alcon Shareholder Litigation*, 719 F.Supp.2d 263, 278–79 (S.D.N.Y.2010);(dismissing action on forum non conveniens grounds sua sponte); *Reingruber v. Dennison Int'l Co., Inc.*, No. 97 Civ. 7023, 1998 WL 760229, at *3 (S.D.N.Y. Oct. 30, 1998) (same).

letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). "In making the determination, the district court is free to consider submissions by the parties without converting a forum non conveniens motion into a motion for summary judgment." *Overseas Media, Inc. v. Skvortsov,* 441 F.Supp.2d 610, 615–16 (S.D.N.Y.2006).

Courts in this Circuit employ a three-part test to analyze the application of forum non conveniens. *See Norex Petrol. Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 154 (2d Cir.2005); *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73–74 (2d Cir. 2001) (en banc). The Court first determines the degree of deference that should be accorded the plaintiff's choice of forum. *See Norex Petrol.,* 416 F.3d at 153–54. Second, the Court considers whether there exists an adequate and available alternative forum where the dispute could be adjudicated. *See Piper Aircraft v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Gilbert,* 330 U.S. at 506–07, 67 S.Ct. 839. Finally, the Court assesses the appropriateness of litigating the action in the plaintiff's choice of forum, as opposed to any adequate alternative venue, by balancing the private interests of the litigants and the public interest concerns of the Court in accordance with the factors articulated by the Supreme Court in *Gilbert. See Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839; *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.,* 311 F.3d 488, 500 (2d Cir.2002); *Turedi v. Coca Cola Co.,* 460 F.Supp.2d 507, 521 (S.D.N.Y.2006), *aff'd,* 343 Fed.Appx. 623 (2d Cir.2009). The inquiry probes whether, in the interests of justice and all other relevant concerns, the action would best be brought in another venue.

### 1. *Deference to Plaintiffs' Chosen Forum*

■ "[T]he choice of a United States forum by a foreign plaintiff is entitled to less deference." *Iragorri,* 274 F.3d at 71 (quotation marks omitted). "The Second Circuit has specifically cautioned district courts that in these cases, a plausible likelihood exists that the selection was made for forum-shopping reasons, and even if this forum was not chosen for such forum-shopping reasons, there is nonetheless little reason to assume that it is convenient for a foreign plaintiff." *Khan v. Delta Airlines, Inc.,* No. 10 Civ. 2080, 2010 WL 3210717, at *4 (E.D.N.Y. Aug. 12, 2010) (quotation marks omitted). In determining "whether a plaintiff's choice of forum was genuinely motivated by convenience," a court should consider "(1) the convenience of the plaintiff's residence in relation to the chosen forum, (2) the availability of witnesses or evidence to the forum district, (3) the defendant[s'] amenability to suit in the forum district, (4) the availability of appropriate legal assistance, and (5) other reasons related to convenience or expense." *Id.* (quotation marks omitted).

Here, all of the Plaintiffs are residents of Dubai, including two corporate entities operating in Dubai and organized under the laws of the British Virgin Islands. Though the scope of this litigation is worldwide, and some United States and even New York City-based witnesses may ultimately be necessary, the core allegations in this case concern representations made by Standard Chartered employees in Singapore and Dubai. And though this Court's exercise of personal jurisdiction over the Standard Chartered defendants may be appropriate, they are, by their own admission, equally available for suit in Singapore. Finally, Standard Chartered has presented convincing evidence that this dispute should be heard in Singapore, as required by the forum selection clauses that bind Plaintiffs. For these reasons, the Court finds that Plaintiffs' choice of forum is entitled to limited deference.

### 2. *Adequate Alternative Forum*

■ The Court next considers whether an adequate alternative forum exists in which Plaintiffs' claims could be adjudicated. The adequate alternative forum requirement is ordinarily satisfied if (1) the other forum is available because the defendant is amenable to service of process there, and (2) the forum permits litigation of the "subject matter of the dispute and offers remedies for the wrongs the plaintiff alleges, even if the causes of action and relief available there are not identical in every respect to the claims or redress he seeks in his chosen forum." *Do Rosario Veiga v. World Meteorological Organisation,* 486 F.Supp.2d 297, 303 (S.D.N.Y. 2007) (*citing Monegasque,* 311 F.3d at 499); *see also Capital Currency Exch., N.V. v. National Westminster Bank PLC,* 155 F.3d 603, 609–610 (2d Cir.1998). Standard Chartered, as the movant, bears the burden of demonstrating that an adequate alternative forum exists. *See Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pak.,* 273 F.3d 241, 248 (2d Cir.2001).

Here, Standard Chartered argues that Singapore is an adequate alternative forum. To this end, Standard Chartered represents that they are amenable to process in Singapore. The parties have also submitted declarations from experts in Singapore law. (*See* Declaration of Goh Phai Cheng, S.C., dated May 3, 2010; Declaration of Francis Xavier, S.C., dated November 11, 2009); *see also City of Sterling Heights Police and Fire Retirement System v. Abbey Nat., PLC,* 423 F.Supp.2d 348, 364 n. 8 (S.D.N.Y.2006) (noting that "U.S. courts frequently rely on such [uncontested] opinions" of foreign law experts to evaluate foreign law).

After review of these materials, the Court is satisfied that Singapore offers more than adequate remedies for the sub-ject of Plaintiffs' lawsuit. According to Standard Chartered's expert Francis Xavier, Singapore recognizes causes of action for breach of fiduciary duty, negligence, deceit, breach of various banking statutory duties, constructive trust, and unjust enrichment. Plaintiffs' Singapore law expert does not dispute that these causes of action are available but instead opines on procedural differences between Singapore and United States federal court proceedings, including the possibility of Plaintiffs' needing to post a bond during proceedings and difficulties in securing the testimony of non-Singapore witnesses. The Court is not persuaded that any of these differences, conclusorily presented and inevitable between different jurisdictions, would deny Plaintiffs their day in court. *See In re Alcon Shareholder Litig.,* 719 F.Supp.2d at 272 ("the forum non conveniens doctrine demands that the alternate forum be adequate, not perfect, and not a mirror image of every substantive and procedural right, remedy and protection potentially available to Plaintiffs' in the American forum of their choice.") Accordingly, the Court finds that Singapore is an adequate alternative forum for this dispute.

### 3. *Balance of Public and Private Interests*

The Court proceeds to balance public and private interests to determine whether the convenience of the parties and the ends of justice would best be served by dismissal. *See Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839. *Gilbert* instructs reviewing courts to disturb a plaintiff's choice of forum only where the balance of private and public interest considerations "strongly" favors the moving defendant. *See DiRienzo v. Philip Services Corp.,* 294 F.3d 21, 30–31 (2d Cir.2002) (*citing Gilbert,* 330 U.S. at 508, 67 S.Ct. 839). For the reasons discussed below, the Court is persuaded

that the *Gilbert* considerations weigh strongly in favor of dismissal.

### a. *Public Interests*

■ The *Gilbert* public interest considerations to be weighed by the Court include: (a) administrative difficulties relating to court congestion; (b) imposing jury duty on citizens of the forum; (c) having local disputes settled locally; and (d) avoiding problems associated with the application of foreign law. *See Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839; *Monegasque*, 311 F.3d at 500.

Here, Standard Chartered's foreign law expert notes that Singapore courts are among the fastest and most efficient in the world. In addition, this Court, considering the contracts between the parties and other operative facts, would no doubt be required to apply Singapore law in adjudicating this case, a task for which Singapore courts are more suited. Additionally, though this case has not unsubstantial ties to other forums, the core facts of the Complaints arise out of the actions of the Singapore branch of what is now Standard Chartered.

### b. *Private Interests*

■ The private interests of the litigants that the Court must consider under the *Gilbert* analysis are: (a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive. *See Gilbert*, 330 U.S. at 508, 67 S.Ct. 839.

Plaintiffs focus most of their argument on the private interests in this case, arguing that because Standard Chartered's due diligence on Fairfield Sentry is at issue, many of the relevant witnesses will be located in New York City, or other United States localities where the Fairfield Greenwich Group is located, and where other lawsuits about Madoff's Ponzi scheme and Fairfield Sentry are pending. This may be true, but it does not diminish that many of the critical witnesses are also located in Singapore, meaning that whichever forum is selected, there will be significant costs related to the witnesses. Plaintiffs have also not presented any material suggesting that a Singapore judgment would be unenforceable against Standard Chartered.

Plaintiffs do present evidence that compulsory process in Singapore is not as robust as it is in the United States and that Singapore courts may be unwilling to issue subpoenas to witnesses outside of Singapore. Though this factor may weigh in Plaintiffs' favor, the argument ignores the other side of the same coin: that this Court's subpoena power could not extend beyond its jurisdiction to compel action by third-party witnesses in Singapore or Dubai. *See* Fed.R.Civ.P. 45(b)(2)(B) (in general, court's subpoena power extends only 100 miles out of its home district). Thus, the Court finds that this factor does not outweigh the other considerations here strongly showing that Singapore is the more appropriate forum for this lawsuit.

### III. *ORDER*

Accordingly, it is hereby

**ORDERED** that the motion to dismiss (Docket No. 387) of defendants Standard Chartered International (USA) Ltd. and Standard Chartered PLC (together, "Standard Chartered") is GRANTED; and it is further

**ORDERED** that the amended complaint of plaintiffs Jitendra Bhatia, Gopal Bhatia, Kishanchand Bhatia, Jayshree Bhatia, and Mandakini Gajara, as well as the complaint of Tradewaves Ltd., Parasram Daryani, Neelam P. Daryani, Vika P.

Daryani, Nikesh P. Daryani, Ashokkumar Damodardas Raipancholia, Dilip Damodardas Raipancholia, Rajeshkumar Damodardas Raipancholia, Kishu Nathurmal Uttamchandani, Prerna Vinod Uttamchandani, Rajendrakumar Patel, Vandna Patel, Arjan Mohandas Bhatia, Kishin Mohandas Bhatia, Suresh M. Bhatia, Bharat Mohandas, and Aarvee Ltd. are dismissed, provided that within seven (7) days of the date of this Order, Standard Chartered submits to the Court a statement expressing its consent that in the event plaintiffs in this action commence litigation in Singapore arising out of the circumstances and general claims asserted in this case, Standard Chartered would accept service of process and the relevant tribunal's exercise of personal jurisdiction over them, not assert any defenses based on statutes of limitations that would not be available to Standard Chartered were the litigation of the action to proceed in this Court, and satisfy any final judgment rendered by a Singapore court of competent jurisdiction in connection with such litigation of claims arising out of the events described in the complaint in this action.

The Clerk of Court is directed to terminate any pending motions and to close this case, subject to its being reopened in the event Standard Chartered fails to satisfy the conditions specified above within seven days of the date of this Order.

**SO ORDERED.**