AMERICAN INTERNATIONAL GROUP EUROPE S.A. (ITALY) as subrogee of Sixty USA, Inc. and Sixty USA, Inc., Plaintiffs,

v.

FRANCO VAGO INTERNATIONAL, INC., Defendant,

v.

Oriental Logistics Group, Ltd. and Yang Ming Marine Transportation Group, Ltd., Third–Party Defendants.

No. 09 civ. 6525 (CM).

United States District Court, S.D. New York.

Nov. 15, 2010.

John Thomas Lillis, Jr., Kennedy Lillis Schmidt & English, New York, NY, for Plaintiffs.

Alexander Peltz, Peltz & Walker, New York, NY, for Defendant.

Paul M. Keane, Cichanowicz, Callan, Keane, Vengrow & Textor, New York, NY, for Third–Party Defendants.

**DECISION AND ORDER GRANTING THIRD–PARTY DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

McMAHON, District Judge:

This is a maritime case involving 138 cartons of women's garments that were shipped from China to New York. The garments were water-damaged upon arriv-al. Because the case presents an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h), this court has jurisdiction over the matter pursuant to 28 U.S.C. § 1333.

## FACTS

Many of the facts of this case are undisputed. Sometime before July 2, 2008, plaintiff Sixty USA, Inc. ("Sixty USA") arranged with defendant Franco Vago International, Inc. ("Franco Vago") to transport 138 cartons of women's apparel from Shanghai, China to New York, New York. (Compl., ¶ 9.) Franco Vago issued three separate bills of lading[1] pertaining to the shipment. The terms and conditions of the bills contain the following forum selection clause:

> GOVERNING LAW AND JURISDICTION—Any dispute arising from or connected with this Bill of Lading shall be subject to the exclusive Jurisdiction of the Court of Florence (Italy) where the FF [Freight Forwarder] has his principal place of business, and Italian law shall apply except as specifically provided herein.

(*Id.*, ¶ 10; Decl. of Alexander Peltz in Opp. to Plaintiffs' Mot. for Summ. Judg., July 6, 2010 ("Franco Vago Summ. Judg., Decl."), Ex. A–C.) Clause 1 of the terms and conditions defines Freight Forwarder as follows:

> FREIGHT FORWARDER ("FF") means the company belonging TO FRANCO VAGO GROUP issuing this Bill of Lading, or in whose name and behalf this BL has issued.

---

1. A bill of lading "records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for car-riage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18–19, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004).

(*Id.*) Clause 2 of the terms and conditions limits the Freight Forwarder's liability as follows:

RESPONSIBILITY—The FF assumes no responsibility as a carrier. Notwithstanding the above in case of loss of, damage to the Goods, misdelivery or delay or any inconvenience whatsoever, the responsibility of the FF, if proved, shall be limited as described below.

(a) When the transport covered by this B/L has the port of departure or the port of delivery in the United States of America the liability of the FF, his Agents and Servants will be determined in accordance with the Carriage of Goods by Sea Act of the United States of America[2] . . . .

FOR THE PURPOSES OF THE PER PACKAGE/UNIT LIMITATION OF LIABILITY PROVIDED BY THE COGSA . . . GOODS CONSOLIATED [sic] IN CONTAINER SHALL BE CONSIDERED ONE PACKAGE/UNIT IRRESPECTIVE OF THE NUMBER, MEASURES WEIGHT OF VALUE OF GOODS.

(*Id.*) All three bills of lading identify Sixty USA as consignee. (*Id.*)

Sixty USA's suppliers, Shanghai Silk Group, Ltd. and Suzhou Everuniversal Import & Export Co., Ltd. (both of which are not parties to this lawsuit), delivered the goods to third-party defendant Oriental Logistics Group, Ltd. ("Oriental Logistics"). Oriental Logistics issued a bill of lading for the 138 cartons of goods, naming Franco Vago as consignee.

The goods were then consolidated into a container for shipment aboard the M/V HANJIN SHANGHAI for transport from Shanghai to New York, New York.

(Compl., ¶ 17.) The M/V HANJIN is owned and operated by third-party defendant Yang Ming Transport Corp. ("Yang Ming"). Yang Ming issued a bill of lading for a container holding 954 cartons of goods—138 of which were the garments belonging to Sixty USA—naming T.J. Expediters, Inc. as consignee. (Decl. of Rose Bove in Sup. of Yang Ming's Mot. to Dis., Mar. 15, 2010 ("Bove Decl."), Ex. 1.) According to Sixty USA, T.J. Expediters is Franco Vago's New York-based agent. (Compl. ¶ 20.) The M/V HANJIN SHANGHAI arrived at Port Newark, New Jersey on July 23, 2008. (*Id.*, ¶ 18.)

The Yang Ming bill of lading contains the following forum selection clause:

JURISDICTION

Except as otherwise provided specifically herein any claim or dispute arising under this Bill shall be governed by the law of England and determined in the English courts to the exclusion of the jurisdiction of the courts of any other place . . . ."

(Bove Decl., ¶ 7.)

None of the relevant bills of lading indicates that Sixty USA's goods were damaged upon receipt. All of the bills contain standard language indicating that all goods are received in good condition unless otherwise noted.

On July 28, 2008, the container was picked up by Argix Direct, Inc., a trucking company hired by Franco Vago, and delivered to the New Jersey warehouse of Passport CFS Logistics ("Passport"), another agent of Franco Vago. (*Id.*, ¶ 20; Aff. of Vincent Apesa Jr. in Sup. of Plaintiffs' Mot. for Summ. Judg., May 24, 2010 ("Sixty Aff."), Ex. H.) There, the container

---

**2.** COGSA was originally codified at § 1301 *et seq.* of the appendix to title 46 of the United States Code. In 1996, it was moved to a note in 46 U.S.C. § 30701. *See* Pub. L. 109–304, § 6(c), Oct. 6, 2006, 120 Stat. 1516. Section 30701, note § 4(5) limits a carrier's liability for loss or damage arising from the transportation of goods to $500 "per package."

was unloaded and its contents were inventoried. In a "stripping report" dated July 28, Passport noted that Sixty USA's goods were received "crushed/wet/damaged." (*Id.*, Ex. G.) On the same day, Passport issued an invoice to TJ Expediters that bore the notation: "some boxes crushed and wet." (*Id.*, Ex. F.)

On July 29, 2008, a trucking company hired by Sixty USA picked up the goods from Passport's warehouse. The driver received an invoice for the goods from "Franco Vago Intl Freight Forwarding," on which the driver noted, "I received some [cartons] wet." (*Id.*, Ex. E.) The next day, the goods were delivered to Sixty USA in New York. (Compl., ¶ 24.)

Shortly thereafter, Sixty USA sent an undated Letter of Reserve to Franco Vago. The letter noted that Sixty USA's goods were delivered "wet, crushed, broken/split, and [with a] strong [odor] present," and that Sixty USA would hold Franco Vago responsible for its loss once a survey of the damage was complete. (Sixty Aff., Ex. J.)

On August 18, 2008, Maritime Alliance Group, Inc. ("Maritime") surveyed the damages on behalf of Sixty USA. On September 26, 2008, Maritime issued a final report. The report reached the following conclusions: (1) when the goods were received by Passport Logistics, there were no holes in the container, nor was there condensation within the container, but the cartons inside were crushed and wet; (2) silver nitrate testing was negative for chlorides, indicating that the damage was caused by fresh water; and (3) weather reports indicate that there was heavy rains in Shanghai on the dates on which it was most likely that the goods were "stuffed" into the container. (*Id.*) Maritime was advised by TJ Expediters that the goods were stuffed into the container by Oriental Logistics. The report concluded by recommending that Sixty USA pursue recovery from Oriental Logistics, Franco Vago (whom Maritime called "the freight forwarder"), TJ Expeditors (referred to as "the consolidator"), and Yang Ming. (*Id.*)

The damage resulted in a total loss of the goods, which had an invoiced value of $91,473.59. Sixty USA recovered $7,865 in a salvage sale and $83,608.59 from its insurer, plaintiff American International Group Europe S.A. (Italy) ("AIGE"), less Sixty USA's $2,500 deductible. (Compl., ¶¶ 30–31.) Sixty USA then issued a subrogation receipt authorizing AIGE to sue on Sixty USA's behalf to recover damages from any and all responsible third parties. (*Id.*)

### PROCEDURAL HISTORY

On July 22, 2009, AIGE and Sixty USA sued Franco Vago for breach of contract and violation of the Carriage of Goods by Sea Act ("COGSA"). Franco Vago filed an answer on August 18, 2009, denying all liability and asserting several affirmative defenses, including: (1) lack of personal jurisdiction; (2) all affirmative defenses included in COGSA and the Harter Act;[3] (3) failure to implead necessary parties; and (4) that any damage to Sixty USA's goods was caused by the culpable conduct of third parties outside of Franco Vago's control. (Franco Vago Ans., ¶¶ 36–41.) Conspicuously absent from Franco Vago's answer is any mention of the forum selection clause in the Franco Vago bills of lading.

On August 31, 2008, Franco Vago filed a third-party complaint against Yang Ming and Oriental Logistics for indemnification and contribution in the event that Franco Vago is held liable to Sixty USA. In the

---

**3.** *See* 46 U.S.C. §§ 30702, 30703, 30705–ⁱ 30707.

alternative, Franco Vago asserts that Yang Ming and Oriental Logistics are directly liable to plaintiffs pursuant to Rule 14(c) of the Federal Rules of Civil Procedure. Attached to the third-party complaint are Notices of Lawsuit and Requests for Waiver of Service of Summons addressed to both Oriental Logistics and Yang Ming, pursuant to Fed. R. Civ. P, 4(d). Rule 4(d) allows a plaintiff to "notify [certain individual or corporate defendants] that an action has been commenced and request that the defendant waive service of a summons." However, the record does not indicate that executed waivers were ever filed with the Court, or that service on either third-party defendant was otherwise effected in a manner permissible under Rule 4(h), which governs permissible methods of service on a corporation. Yang Ming subsequently filed an answer to the third-party complaint in which it asserts, *inter alia*, insufficient process (pursuant to Rule 12(b)(4)) and insufficient service of process (pursuant to Rule 12(b)(5)) as affirmative defenses. Oriental Logistics, on the other hand, has not appeared, and the 120 days allotted for service by Fed.R.Civ.P. 4(m) has long since passed. Franco Vago has not requested additional time to effect service, nor has it shown good cause for failing to serve Oriental Logistics. Therefore, pursuant to Rule 4(m), the Court dismisses Franco Vago's third-party complaint against Oriental Logistics without prejudice.

Yang Ming filed its answer to Franco Vago's third-party complaint on October 15, 2009. On the same day, Yang Ming filed an answer to AIGE and Sixty USA's complaint pursuant to Rule 14(c). The two answers are essentially identical. Both deny liability for any damage to Sixty USA's goods, and assert several affirmative defenses, including improper service (as discussed above), and the forum selection clause in Yang Ming's bill of lading. Yang Ming also asserted cross-claims against both Franco Vago and Oriental Logistics. On October 27, 2009, Franco Vago filed an answer to Yang Ming's cross-claim, denying all allegations contained therein.

On February 9, 2010, the case was ordered eligible for mediation pursuant to the Civil Justice Expense and Delay Reduction Plan, and the action was stayed pending the conclusion of mediation. While the case was stayed, the parties filed several motions with the Court. The stay was lifted on May 27, 2010, and the Court now considers those motions.

*Yang Ming's Motion to Dismiss*

On March 15, 2010, Yang Ming filed a motion to dismiss based on the mandatory and exclusive forum selection clause in the Yang Ming bill of lading. Yang Ming also reserved the right to file a motion for summary judgment on the theory that claims against it are time barred should its motion to dismiss be denied. Yang Ming does not assert improper service as grounds for dismissal in its motion to dismiss—as it had in its prior pleadings—so the Court deems that defense waived. In short, Yang Ming asserts that all claims brought against it arise from the Yang Ming bill of lading, which unequivocally requires such claims to be brought in the courts of England.

*Franco Vago's Affirmation in Support of Yang Ming's Motion to Dismiss*

On April 2, 2010, Franco Vago filed an "Affirmation in Support of Motion for Dismissal Based on Lack of Jurisdiction." In joining Yang Ming's motion, Franco Vago argues that all claims in the case—including the claims brought by AIGE and Sixty USA against Franco Vago—are based on Yang Ming's bill of lading, and thus are subject to the exclusive jurisdiction of English courts. In doing so, Franco Vago makes no mention of the forum selection clause in the *Franco Vago* bills of lading. According to Franco Vago:

"the jurisdiction of this Court [should] be extinguished based on the jurisdictional clause in the bill of lading that is cited by defendant Yang Ming and because plaintiff had [sic] sued on that bill of lading."

(Aff. in Sup. of Mot. for Dis. Based on Lack of Jur., Apr 2, 2010, ¶ 3.)

As explained below, Franco Vago's argument is without merit. AIGE and Sixty USA did not sue on Yang Ming's bill of lading—Yang Ming was not a party to the original action. AIGE and Sixty USA are clearly suing on the *Franco Vago bills of lading*, the only bills to which Sixty USA is a party. The only party with a claim based on the *Yang Ming bill of lading* is Franco Vago, as third-party plaintiff. Thus, the only purpose of Franco Vago's affirmation in support of Yang Ming's motion to dismiss appears *to be to dismiss its own third-party claim.*

*AIGE's Motion for Summary Judgment*

On May 24, 2010, AIGE and Sixty USA filed a pre-discovery motion for summary judgment against Franco Vago. According to plaintiffs, no material issue of fact precludes this Court from holding Franco Vago liable for the damage to Sixty USA's goods. AIGE and Sixty USA claim that the Franco Vago bills of lading clearly state that Franco Vago received the goods in good condition, and that Franco Vago assumed liability for loss or damage to the goods from the time they left the hands of Sixty USA's suppliers, to the time they arrived in New York. The bills of lading contain the notation "CFS–CFS," which AIGE and Sixty USA allege stands for "container freight station to container freight station," meaning that Franco Vago was responsible for the goods at all times during which they could have been damaged. AIGE and Sixty USA also claim that the "limited liability" language in clause 2 of the terms and conditions of the Franco Vago bills of lading does not pre-clude AIGE and Sixty USA from recovering the full amount of damages they seek, and that Franco Vago is liable under COGSA as a "non-vessel owning common carrier" ("NVOCC").

In its memorandum of law in opposition to AIGE and Sixty USA's motion for summary judgment, Franco Vago raises the forum selection clause in the Franco Vago bills of lading *for the first time,* claiming that the instant matter is subject to the exclusive jurisdiction of the courts of Florence, Italy. In the alternative, Franco Vago argues that it is not liable for loss or damage to Sixty USA's goods because plaintiffs cannot prove that Franco Vago is a NVOCC, as opposed to a "freight forwarder." According to Franco Vago, a freight forwarder is not liable for lost or damaged goods under COGSA, and the terms and conditions of the Franco Vago bills of lading explicitly shield Franco Vago from liability as a carrier.

In their reply memorandum of law, AIGE and Sixty USA claim that (1) Franco Vago waived any defense arising from the forum selection clause by failing to assert it at any time prior to its opposition to summary judgment; and (2) that Franco Vago operates as a NVOCC, and not a freight forwarder, as a matter of law.

For the reasons discussed below, Yang Ming's motion to dismiss is granted and AIGE and Sixty USA's motion for summary judgment is denied. At a minimum, discovery is necessary to resolve material issues of fact in this case.

## DISCUSSION

I. **Yang Ming's Motion to Dismiss Based on the Forum Selection Clause in the Yang Ming Bill of Lading**

A. *Applicable Legal Standards*

Yang Ming asserts that its motion to dismiss based on the forum selection

clause in the Yang Ming bill of lading is not made under any particular procedural rule or statute, but instead under the Court's "inherent power to enforce a contractual forum selection clause." (Memo. of Law in Sup. of Yang Ming's Mot. to Dis., Mar. 15, 2010, at 3.) The Second Circuit has acknowledged that no Federal Rule of Civil Procedure is designed to address the enforcement of such a clause. *See New Moon Shipping Co. v. MAN B & W Diesel,* 121 F.3d 24, 29 (2d Cir.1997). "The Supreme Court has not specifically designated a single clause of Rule 12(b) as the 'proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause,' nor [has the Second Circuit]." *Asoma Corp. v. SK Shipping Co., Ltd.,* 467 F.3d 817, 822 (2d Cir. 2006) (*quoting New Moon Shipping,* 121 F.3d at 28; *citing Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 589, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), and *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 4, 9–19, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

■ Prior to the Second Circuit's decision in *New Moon Shipping,* courts in this district generally treated motions to dismiss based on a forum selection clause as being brought under Rule 12(b)(1) for lack of subject matter jurisdiction, or under Rule 12(b)(3) for improper venue. *Asoma Corp.,* 467 F.3d at 822 (citations omitted). However, in *New Moon Shipping,* the Second Circuit "refused to pigeon-hole these claims into a particular clause of Rule 12(b)." *Id.* Instead, the "burden [is] on the plaintiff, who brought suit in a forum other than the one designated by the forum selection clause, to make a 'strong showing' in order to overcome the presumption of enforceability." *New Moon Shipping,* 121 F.3d at 29.

■ The basic law relating to the enforceability of forum selection clauses in admiralty cases was established by the Supreme Court in *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In the admiralty context, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. 1907. Based on *Bremen,* the Second Circuit has endorsed a four-part analysis in determining whether a forum selection clause is enforceable. *See Phillips v. Audio Active Ltd.,* 494 F.3d 378, 383 (2d Cir.2007). First, the court must determine whether the clause was reasonably communicated to the party resisting enforcement. Second, the clause must be mandatory, rather than merely permissive. Third, the relevant claims and parties must be subject to the clause. Finally, the court must "ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.' " *Id.* at 383–84 (*quoting Bremen,* 407 U.S. at 15, 92 S.Ct. 1907).

■ The leading case discussing forum selection clauses in the context of an ocean bill of lading subject to COGSA is *Vimar Seguros v. Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). In that case, the owner of a shipload of fruit that was damaged in transit sued the vessel and the vessel owner. The defendants moved to stay the action and compel arbitration in Japan based on an arbitration clause in the bill of lading. Plaintiffs argued that enforcement of the arbitration clause would violate COGSA § 3(8), which prohibits any term in a bill of lading that lessens the duties and liabilities of the carrier under COGSA. The Supreme Court held that the arbitra-

tion clause did not violate § 3(8), because that section concerns the carrier's substantive liability for loss or damage to cargo, not "the separate question of the means and costs of enforcing that liability." *Id.* at 534, 115 S.Ct. 2322. Therefore, when evaluating the enforceability of a forum selection clause in a bill of lading subject to COGSA § 3(8), "the relevant question ... is whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." *Id.* at 539, 115 S.Ct. 2322.

While *Sky Reefer* involved a foreign arbitration clause and not a forum selection clause, its holding is routinely applied to forum selection clauses in this district and elsewhere. *See, e.g., Asoma Corp. v. M/V SOUTHGATE,* No. 98 Civ. 7407(CSH), 1999 WL 1115190, at *2 (S.D.N.Y. Dec. 7, 1999) (collecting cases).

### B. Discussion

None of the parties disputes the validity of the forum selection clause in the Yang Ming bill of lading, nor does anyone assert that claims against Yang Ming are not subject to the clause. AIGE and Sixty USA assert no claims against Yang Ming at all, and Franco Vago has filed an affirmation *in support* of dismissing all claims against Yang Ming (meaning, presumably, its own claims against Yang Ming as third-party plaintiff). Therefore, it is clear that Yang Ming must be dismissed from this case, albeit without prejudice. Any claims asserted against it arising from the present dispute should be brought in the courts of England.

Franco Vago, however, attempts to go one step further; it argues that AIGE and Sixty USA's claims against *Franco Vago* should be dismissed because the claims against Yang Ming must be litigat-

ed in England. Franco Vago essentially tries to co-opt the forum selection clause in the Yang Ming-issued bill of lading and make it applicable to the distinctly separate bills of lading Franco Vago issued to Sixty USA.

This argument fails. AIGE and Sixty USA are not bound by the terms of a contract to which neither was a party, and of which neither had notice; nor can Franco Vago assert contractual rights grounded in the terms of a contract to which *it* was not a party. Courts in this district have made clear that an upstream intermediary cannot co-opt the terms of a downstream carrier's bills of lading, but must instead rely on the terms of its own bills of lading. "[T]he liability of each defendant must be determined by reference to its own bill of lading ... consistent with [the] weight of authority, including caselaw from this circuit." *Royal Ins. Co. v. M.V. ACX RUBY,* No. 97 Civ. 3710(MBM), 1998 WL 524899, at *2 (S.D.N.Y. Aug. 21, 1998) (collecting cases).

Franco Vago's position does not change if it was acting as a freight forwarder, rather than a NVOCC, as it claims. Either way, Franco Vago is an upstream intermediary attempting to assert the terms of a downstream carrier's bill of lading against a shipper who is not party to the carrier's contract, which it cannot do. While more difficult questions can arise when determining whether the terms in a shipper and freight forwarder's contract can be asserted by *downstream* intermediaries or carriers, *see, e.g., Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004), this is not such a case. Therefore, Franco Vago's claim that the forum selection clause in the Yang Ming bill of lading—to which neither Sixty USA nor Franco Vago is a party—

somehow supersedes the separate, distinct contract between Sixty USA and Franco Vago fails. *See also Bax Global Inc. v. Ocean World Lines, Inc.,* No. 07 Civ. 10457(NRB), 2009 WL 3001816, at *3 (S.D.N.Y. Sept. 18, 2009) (dismissing an analogous claim as "clearly a non-meritorious effort at piggy backing").

■ Finally, in its memorandum of law in support of Yang Ming's motion to dismiss, Franco Vago argues that AIGE and Sixty USA's claims against Franco Vago should be dismissed on the completely unrelated grounds that AIGE and Sixty USA cannot prove that a contract exists between Sixty USA and Franco Vago. While it would be more appropriate for Franco Vago to make this argument in a separate Rule 12(b)(6) motion to dismiss for failure to state a claim, I will address it here, because both parties addressed the issue in their briefs.

The crux of Franco Vago's argument is that AIGE and Sixty USA fail to state a claim against Franco Vago because they can only produce the front-side of the Franco Vago bills of lading, and not the reverse-side, which contains the contracts' terms and conditions. Franco Vago also points to the fact that the front-sides of the bills are not signed, making them unenforceable.

This argument fails in light of the fact that *Franco Vago* produced copies of the bills. of lading, *including the terms and conditions,* in its affidavit in opposition to AIGE and Sixty USA's subsequent motion for summary judgment, and attested to the fact that they are true and accurate copies of the bills of lading. (Decl. of Officer of Franco Vago, Int'l, Inc., July 6, 2010, ¶ 4.) Therefore, Franco Vago's assertion that no contractual relationship exists because AIGE and Sixty USA cannot produce the terms and conditions of the bills of lading—an argument Franco Vago repeats in its opposition to summary judgment, *after* it produced and attested to the terms and conditions of the contract—is without merit. Indeed, it is frivolous.

## II. AIGE and Sixty USA's Motion for Summary Judgment

### A. The Franco Vago Forum Selection Clause

As a threshold matter, the Court must address Franco Vago's claim that the forum selection clause in its bills of lading is cause for dismissing this case.

■ Franco Vago asserts the forum selection clause as a defense for the first time in its affidavit in opposition to AIGE and Sixty USA's motion for summary judgment, which was filed almost a year after Franco Vago's answer to the original complaint. Franco Vago did not assert the forum selection clause as a defense in its answer, nor did it assert a more general defense based on improper venue. In fact, the record indicates that Franco Vago—despite *having drafted* the terms and conditions of the relevant bills of lading—was apparently not aware of the forum selection clause until eleven months after this action was commenced. (*See* Alexander Peltz Let. to Court, June 9, 2010.) Nevertheless, Franco Vago claims that the forum selection clause was not waived because Franco Vago asserted lack of personal jurisdiction as an affirmative defense, which Franco Vago argues encompasses a defense based on an exclusive and mandatory forum selection clause.

AIGE and Sixty USA understandably object to Franco Vago's assertion of the

forum selection clause this late in the game. They claim that the clause was waived because Franco Vago did not mention the clause in its answer or in any of its subsequent affidavits or memoranda submitted to this court prior to its opposition to AIGE and Sixty USA's motion for summary judgment. The Court agrees.

As the Supreme Court noted in *Bremen*, a mandatory and exclusive forum selection clause does not oust the court of its jurisdiction over the parties or the claims, it merely prompts the court to answer the threshold question of "whether that court should ... exercise[ ] its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause." 407 U.S. at 12, 92 S.Ct. 1907. As the Second Circuit noted in *New Moon Shipping*, "we have long recognized that parties have no power by private contract to oust a federal court of jurisdiction otherwise obtaining." 121 F.3d at 28 (citations omitted).

■ Therefore, a defendant asking that a claim be dismissed because of a forum selection clause is *not* claiming that the court lacks subject-matter jurisdiction over the claim or in personam jurisdiction over the defendant. *See, e.g., Licensed Practical Nurses, Technicians & Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*, 131 F.Supp.2d 393, 403 (S.D.N.Y. 2000) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)). Rather, the defendant is asking the court to enforce the contractual rights and obligations agreed upon by the parties. Because an affirmative defense of lack of personal jurisdiction does not implicate the forum selection clause, Franco Vago's claim that it preserved the right to enforce the forum selection clause by asserting lack of personal jurisdiction as a defense in its answer is unavailing.

As discussed above, the Second Circuit has acknowledged that a motion to dismiss based on a forum selection clause is not brought under a particular Federal Rule of Civil Procedure. "The courts of appeal are split as to whether dismissal of [an] action is proper pursuant to Rule 12(b)(3) or Rule 12(b)(6) when it is based on [a] forum selection clause rather than on non-compliance with a federal venue statute; most of the decided cases use the former rule as the basis, however." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1352 at 318–19 (3d ed. 2004). Recognizing that there is no clear consensus within this Circuit, many courts in this district have adopted the majority approach by treating such requests as motions to dismiss for improper venue under Rule 12(b)(3). These cases have held that enforcement of a forum selection clause is waived if the defendant does not assert the clause as a defense in its first responsive pleading. *See, e.g., Bax Global, Inc. v. Ocean World Lines, Inc.*, No. 07 Civ. 10457(NRB), 2009 WL 3001816, at *1 n. 2 (S.D.N.Y. Sept. 18, 2009); *Medoil Corp. v. Citicorp*, 729 F.Supp. 1456, 1457 (S.D.N.Y.1990). Applying this approach, Franco Vago clearly waived enforcement of the forum selection clause by failing to assert it in its answer.

However, as Judge Lynch noted in *Licensed Practical Nurses:*

> [i]t seems incorrect to treat [a forum selection clause] as defeating venue in the non-preferred forum ... [because] venue ... is 'defined by statute at 28 U.S.C. § 1391, which sets forth where venue may properly be laid. The determination of the appropriate venue under

§ 1391 revolves around [various factors listed in that statute, which do not include forum-selection clauses.] Venue, as that term is defined by Congress, is proper in this district.... The fact that the parties contractually agreed to litigate disputes in another forum is not a question of venue, but one of contract, which will be enforced unless fundamentally unfair.'

131 F.Supp.2d at 404–05 (*quoting Nat'l Micrographics Sys., Inc. v. Canon, U.S.A., Inc.,* 825 F.Supp. 671, 678–79 (D.N.J. 1993)). I agree with Judge Lynch's analysis, and, therefore, address Franco Vago's forum selection clause defense not as a motion to dismiss for improper venue pursuant to Rule 12(b)(3), but as a question of whether the Court should enforce the terms of the contract entered into by the parties. *See also Ferraro Foods, Inc. v. M/V IZZET INCEKARA,* No. 01 Civ. 2682(RWS), 2001 WL 940562, at *7 (S.D.N.Y. Aug. 20, 2001) ("In light of this procedural ambiguity, the motion [to dismiss based on the forum selection clause] will be addressed under both the venue and contract theories.").

 A party has waived a contractual right when it voluntarily and intentionally abandons the enforcement of that right. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 585 (2d Cir.2006). "Waiver may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." *Gen. Motors Acceptance Corp. v. Clifton–Fine Cent. Sch. Dist.,* 85 N.Y.2d 232, 236, 647 N.E.2d 1329, 1331, 623 N.Y.S.2d 821, 823 (1995). "Because waiver of a contract

right must be proved to be intentional, the defense of waiver requires a 'clear manifestation of an intent by plaintiff to relinquish her known right' and 'mere silence, oversight or thoughtlessness in failing to object' to a breach of the contract will not support a finding of waiver." *Beth Israel,* 448 F.3d at 585 (quoting *Courtney–Clarke v. Rizzoli Int'l Publ'ns, Inc.,* 251 A.D.2d 13, 13, 676 N.Y.S.2d 529 (1st Dep't 1998)).

 Here, Franco Vago's failure to assert the forum selection clause during the first eleven months of the pending litigation goes far beyond "mere silence, oversight or thoughtlessness in failing to object." In its answer, Franco Vago admits to issuing three bills of lading for shipment of goods tendered by Sixty USA. (Franco Vago Ans., ¶¶ 9–10.) But Franco Vago made no mention of the forum selection clauses in those bills in its answer, nor did it claim that this Court was the wrong place to litigate under some other rubric. Nothing in Franco Vago's pleadings could reasonably put AIGE and Sixty USA on notice that it intended to preserve the forum selection clause as a defense. To the contrary, Franco Vago availed itself of this forum by attempting to implead third-party defendants and filing several affidavits, affirmations, and memoranda of law with this Court—all *before* it asserted the forum selection clause in its brief in opposition to AIGE and Sixty USA's motion for summary judgment.[4]

While courts in this district have held that a defendant that files a cross-claim and impleads a third-party does not necessarily waive its right to subsequently assert a forum selection clause, those cases invariably involve defendants who referred

---

**4.** By affirmatively asserting claims in this Court, Franco Vago waived any challenge to personal jurisdiction. *See* Fed.R.Civ.P. 12(h);

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 705, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

to the clause in their answers, or who filed timely pre-answer motions to dismiss on the grounds of the forum selection clause. *See, e.g., Wachovia Bank Nat. Ass'n v. Encap Gold Holdings, LLC,* 690 F.Supp.2d 311, 328 (S.D.N.Y.2010); *Jockey Int'l, Inc. v. M/V "LEVERKUSEN EXPRESS",* 217 F.Supp.2d 447, 455 (S.D.N.Y.2002); *LPR, SRL v. Challenger Overseas, LLC,* No. 99 Civ. 8883(JGK), 2000 WL 973748 (S.D.N.Y. July 13, 2000); *see also Ferraro Foods, Inc. v. M/V IZZET INCEKARA,* No. 01 Civ. 2682(RWS), 2001 WL 940562, at *7 (S.D.N.Y. Aug. 20, 2001).

Here, Franco Vago made no mention of the clause in its answer, nor did it at any time file a motion to dismiss based on the forum selection clause in the Franco Vago bills of lading. In fact, Franco Vago has not moved to dismiss the claims against it at all; it only asserts the forum selection clause in an effort to defeat AIGE and Sixty USA's motion for summary judgment.

Based on the foregoing, the Court holds that Franco Vago has waived enforcement of the forum selection clause and consented to jurisdiction in this forum.

### B. AIGE and Sixty USA's Motion for Summary Judgment

██ Moving to the merits of AIGE and Sixty USA's motion for summary judgment, material issues of fact preclude the Court from granting plaintiffs' motion. Reading the evidence in the light most favorable to Franco Vago, AIGE and Sixty USA cannot prove that Franco Vago is liable for the damaged garments. The terms and conditions of the Franco Vago bills of lading explicitly state that Franco Vago "assumes no responsibility as a carrier," and, not withstanding that clause, that Franco Vago's liability is limited to the "per package/unit" limitation provided by COGSA, under which AIGE and Sixty USA could only recover $500 for damage to the garments. Whether the "CFS–CFS" notation on the bills supersedes the aforementioned terms and conditions—as AIGE and Sixty USA suggest—cannot be determined on a pre-discovery motion for summary judgment. Therefore, AIGE and Sixty USA's motion for summary judgment is denied.

### CONCLUSION

For the foregoing reasons, Yang Ming's motion to dismiss (docket no. 15) is granted, and Plaintiffs' motion for summary judgment (docket no. 25) is denied. The Clerk of the Court is instructed to remove docket numbers 15 and 25 from the Court's active motion list. Because third-party defendant Oriental Logistics Group, Ltd. was never served, the Clerk shall remove Oriental Logistics from the caption.

This constitutes the decision and order of the Court.